# SUPREME COURT.

## WILLIAM A. ROUSSEAU agt. THE CITY OF TROY.

*Right to appropriate a burial ground held by a city to another purpose.*

Where, in 1796, the city (then village) of Troy accepted a deed of a plot
of ground therein from the original owner "for the purpose of a burial
ground," which has ever since been used for that purpose, *it seems* that
the city cannot appropriate the ground for any other purpose.
But a citizen of Troy having a grandfather buried upon the premises has
no such special interest or rights to be thereby affected different from
many other inhabitants of Troy, that he can sustain an action to restrain
the city from appropriating the premises to other purposes. The
inhabitants of Troy are all affected, and no one person can become the
champion of the whole to give him a standing in court.

*Ulster Special Term, July,* 1875.

APPLICATION for an injunction to restrain the defendant
from appropriating and using a lot in the city, conveyed to it
for burial purposes, to erect thereon a city hall.

*John B. Gale,* for motion.

*R. A. Parmenter,* for city and opposed.

WESTBROOK, *J.* — Waiving one of the points urged by the
plaintiff, that as early as the year 1786, Mr. Jacob D. Van-
derheyden, who was then the owner of the premises in ques-
tion, dedicated them to the public as a burial lot, these
facts are uncontradicted: On the 20th day of May, 1796, the
city, then the village of Troy, accepted from the said Van-

derheyden a conveyance of the plot of land "for the purpose of a burial ground," and to hold the same only to such special use. In conformity with the terms of the deed, the premises have been used for that purpose ever since, though as early as 1821, all burials, except still-born infants, were prohibited therein, and although since the year 1830 burials have been very infrequent within the enclosure.

Holding the title to the premises, not as absolute owner, but simply and only for the purpose specified in the deed, it is not readily seen how the defendant can legally divest itself of the trust and appropriate the land to its own use for city purposes, and erect thereon a building required for the transaction of its municipal business. Had the property been conveyed to an individual, to be held for the same object, and he had accepted the trust, could he, in violation thereof, remove the bodies there reposing and proceed to erect a dwelling thereon for his own occupation? I see no difference between the two cases. The fact that the custodian of the title, and the trustee to carry out the interest of the grant, is a municipal corporation, does not impair the force of the argument. The one has no greater right to use the premises for his own purposes than the other.

This point is not at all controlled by the case of *The Corporation of the Brick Presbyterian Church in the City of New York* agt. *The Mayor, &c., of the City of New York* (*Cowen*, 538). The corporation of the city had conveyed to the church a plot of ground for a cemetery. Empowered by an act of the legislature of the state so to do, the defendants had prohibited the use of the ground for that purpose. The court held that they could not by their contract, *i. e.*, the covenant for quiet enjoyment in the deed, " control or embarrass their legislative powers and duties," and that their ordinance repealed the covenants. So by the acceptance of this grant, the corporation of the city of Troy could not divest itself of the power which it possessed, to prohibit, for sanitary reasons, burials in the lots. But this is a very different thing from its

right to appropriate and use the property for its own, and a different purpose from that expressed in the deed.

Neither is this cause controlled by those wherein it has been held that the owner of a pew in a church building holds it subordinate to the power of the corporation to take down the edifice and erect a new one. This power is implied from the nature of the thing conveyed, which can only exist while the structure remains. But suppose the pew owner, who takes the title for the uses and purposes for which a pew is designed, should undertake to use it for some other object than that specified in or implied from the nature of the grant, could he be restrained? The answer is obvious.

Neither do I question the power and right of defendant to remove the dead, when this is necessary for sanitary reasons, though from the long length of time which has elapsed since burials have taken place therein (if the answer be true), it is difficult to see the existence of any such reasons, and they must exist to justify it. All this fails to meet the point, which is, that a trustee holding property for the purpose expressed in the grant cannot, in violation of the trust, convert the premises so held to his, or its own uses. Such a proposition, it seems to me, shocks the moral sense and cannot be maintained.

As I have determined to deny the application for another reason, which I shall presently state, it was perhaps unnecessary for me to give expression to the views thus far advanced. In a work involving so large an outlay of money as that contemplated in this instance, I thought it but just to the representatives of the inhabitants of an enterprising city to state what seemed to me difficulties in the way of the execution of their project. Doubtless they have not escaped the consideration of their learned counsel, who may have a sufficient answer to them, depending upon facts or reasons not stated or apparent to me. As the questions may arise in another form, I prefer to state them now, rather as an enunciation of present impressions than as formal and deliberate opinions.

The necessity of a speedy adjudication of this application was more important than a deliberate judgment upon a matter not absolutely necessary to the determination of this motion, which I think cannot be granted for the reason that this plaintiff has no standing upon which this action can be maintained.

The act sought to be enjoined — the diversion of the property held by the defendant to an object different from that specified in the grant under which it is held — does the plaintiff no more injury than all the other inhabitants of the city; he has no special property in the premises, and the prospective advantages, if any, to be derived from the right to a burial therein, and the wounding and laceration of feeling caused by the removal of the remains of kin and friends, he shares with many others. The inhabitants of Troy are all affected, and no one person can become the champion of the whole. This doctrine is so well settled that the citation of authority is unnecessary.

This point did not escape the attention of the learned counsel for the plaintiff; he argued that when the kin of any man had been deposited in this lot, then such person had a special interest in the maintenance of the premises intact for the purposes to which they had been dedicated, in which the other inhabitants did not share. This is true in one sense, though not in the legal sense in which it was sought to be applied. The special interest which the party must have to bring the action must be something more than a greater attachment to the sanctity of the spot growing out of his reverence to the loved, who are there hidden from sight. It must, it seems to me, be a violation of some right of which he is the lawful custodian. The dead whom he seeks to protect, no matter how dear to him, are not *his* dead in a legal sense. The plaintiff owns no burial plot within the ground, and the nearest relative to him there interred is his grandfather, and his father the son of the dead ancestor, is still living. To the father (*see the very learned and able opinion and report*

*of Samuel B. Ruggles on the "Law of Burial," contained by way of appendix in 4 Bradford, page* 503 ; *see conclusion in page* 532) "as the next of kin belongs exclusively the right to bury   *   *   *   and to preserve" the corpse of his father, and the grandfather of the plaintiff.   He is not a party to this suit; and whilst respecting the instincts and feelings of the party who has brought the action, I cannot hold that he will sustain such a special injury sought to be prevented, as will enable him to maintain this action.

The application for an injunction must be refused, but as the right of the defendant to do the act sought to be enjoined is very doubtful, no costs are awarded.