NOTE.— The question involved in the foregoing case seems to be a very close and interesting one, and has been closely and sharply contested. The case having gone back for a new trial, and there having been such a diversity of reasoning and comment upon the cases cited, we have given more space than is our custom to the arguments of counsel, believing that in doing so we were conferring a benefit upon the profession.—[REP.

---

# SUPREME COURT.

MARIA SNYDER agt. WILLIAM E. SNYDER and JOHN CASWELL.

*Right of burial— Right to select the place of — Injunction.*

The question as to the right to select the place of burial of deceased must be solved upon equitable grounds.    While there is property in the burial lot, in the monuments, in the ornaments and decorations of the deceased or his grave, there is none in the remains themselves.

Since the common law cannot protect or bestow them as property or afford an adequate remedy in cases which sometimes occur, equity will be invoked to grant such protection and give such remedies as seem to be required by the circumstances, and are in consonance with the feelings of mankind.

The person having charge of the remains hold them as a sacred trust for the benefit of all who may, · from family ties or friendship, have an interest in them; in case of a contention the court should assume an equitable jurisdiction over the subject, somewhat in analogy to the care and custody of infants, and make such a disposition as should seem to be best and right under all the circumstances.

In a contention between the widow of the deceased (who was his second wife) and his only son and heir (being the child of his first marriage), as to the disposition of his remains after taking into consideration all the circumstances:

*Held,* that the claim of the son was to be preferred.

*Schenectady Special Term, September,* 1880.

MOTION to dissolve injuntion.

David Snyder died August 2, 1880, in the asylum for the insane in Utica, of which he was then an inmate. The defendant, William E. Snyder, is his only son and heir, being the child of his first marriage. The deceased formerly resided in Glastonbury, Connecticut, was married there in 1840, and continued to reside there until 1869. While there three children were born to him, two of whom and his first wife, their mother, died and were buried in a lot which he purchased in the cemetery there. In 1876 the said David married the plaintiff, who was then residing with her father in the town of Florida, Montgomery county, where she has since and still resides. David lived with her at her father's for about two years, when, having been adjudged a lunatic, a committee was appointed of his person and estate, and he was removed to the asylum. There is no issue of the second marriage. His son was present at the time of his death, took charge of the remains; the funeral services, by consent of both the widow and son, were held at the home of the widow, she being confined there by illness. The widow desired the remains to be buried in a lot owned by her father in the cemetery in the village of Amsterdam; the son desired to have them conveyed to Glastonbury and buried in the lot of the deceased by the side of his first wife and deceased children. Two sisters of the deceased united with the son in his request. The son and his codefendant, a brother-in-law of the deceased, were by means of superior force about to place the remains upon a railroad car for the purpose of transportation to Glastonbury, when they were stayed by the injunction which this motion seeks to dissolve. The deceased left no will.

*W. L. Vandenburg*, for plaintiff.

*P. J. Lewis*, for defendants.

LANDON, *J.* — It is asserted in many cases, following the Roman law, that the exclusive right of burial and the right to.

select the place of burial rests, in the absence of any testamentary direction on the part of the deceased, in the next of kin (4 *Bradf. Sur. R.*, 532; 3 *Edw. Ch.*, 152; *Coppers' case*, 58 *How. Pr.*, 55; *Tyler's Ecc. Law, sec.* 971; *Rosseau* agt. *City of Troy*, 49 *How. Pr.* 492; *Wyncoop* agt. *Wyncoop*, 42 *Penn.*, 293). For curious and interesting discussions and notes to cases upon the subject, see also notes to *Moak's Eng. Rep.* (vol. 12, *p.* 656), *Pierce* agt. *Proprietors of Swan Point Cemetery* (10 *R. I.*, 227). Most of the cases there referred to arose with respect to the right to protect the place where the remains were buried, to prevent a disinterment or to collect from the executors, husband or relative of the deceased the expenses of the funeral. In the absence of a contention prior to burial, as to the right between relatives to designate the place of burial, the broad doctrine that the right rests exclusively with the next of kin can hardly be considered as a judicial exclusion of the right of the widow. The words "next of kin," used *simpliciter*, without anything in the context to indicate a different meaning, mean those of the kindred or blood, excluding the widow (*Slosson* agt. *Lynch*, 43 *Barb.*, 147). It is otherwise as to statutes in which the intent is plain that the widow is included (*Merchants' Ins. Co.* agt. *Hinman*, 32 *Barb.*, 410 ; *Green* agt. *Hudson R. R. R. Co.*, 32 *Barb.*, 25). In the *Secor case* (10 *Albany Law Journal*, 70), after the burial of the deceased by the widow, with the consent of the son, the latter was enjoined from removing the remains for the purpose of interment in a lot of his own. It is true that in the case it was remarked that the wife's right of burial was better than the son's, but that was not the point involved, and the case was well disposed of on the ground that the son did not, at the time of burial, dissent. In *Pierce* agt. *Proprietors, &c.* (10 *R. I.*, 227), the widow, after burial, was required at the suit of the son to restore the remains of her husband to the burial lot in which they had been interred upon his death, with her consent and the consent of his children, and from which she had removed

them without their consent for the purpose of interment elsewhere.

In *Wyncoop* agt. *Wyncoop* (42 *Penn.*, 293), the widow was denied the right to remove the remains of her deceased husband from the cemetery in which his relatives had interred them, and this under circumstances of peculiar urgency in her favor. The courts will intervene to protect the grave where the remains lie, but are slow to permit, against the objection of the relatives, a removal after they are once buried (*See Moak's note, supra*).

It is believed that this question must be solved upon equitable grounds. While there is property in the burial lot, in the monuments, in the ornaments and decorations of the deceased or his grave, there is none in the remains themselves. Since the common law cannot protect or bestow them as property, or afford an adequate remedy in cases which sometimes occur, equity has been invoked to grant such protection and give such remedies as seem to be required by the circumstances, and are in consonance with the feelings of mankind, and equity has assumed jurisdiction (*Kurtz* agt. *Beattie.* 2 *Peters*, 566, 584; *Trustees* agt. *Walsh,* 57 *Ill.*, 363; *Pierce* agt. *Proprietors, &c. ; Wyncoop* agt. *Wyncoop ; Rosseau* agt. *City of Troy; Secor's case, above cited, see* 4 *Alb. Law Jour.*, 56; 17 *ib.*, 258). In the case of *Pierce* agt. *Proprietors, &c.*, it was said that the person having charge of the remains held them as a sacred trust for the benefit of all who may, from family ties or friendship, have an interest in them; that in case of a contention, the court should assume an equitable jurisdiction over the subject, somewhat in analogy to the care and custody of infants, and make such a disposition as should seem to be best and right under all the circumstances. I entirely concur in this view.

To lay down the inflexible rule that the widow is to be preferred to the children, might, rare as such contentions are, sometimes result in great harshness and outrage. Adopting this rule, I award the disposition of these remains to the son,

People *ex rel.* Gilmore agt. Callahan.

to the end that they may be buried in the lot purchased by the deceased in his lifetime, near the place of his early residence, where his first wife, and two children by her, lie buried. He had no children by his last wife; the lot in which she proposes to bury him is her father's. It cannot now be known whether she will find her grave in the same lot and not by the side of another husband. It seems to be more in consonance with what we may presume his feelings in his rational moments to have been, to bury him by the side of his children and their mother, rather than alone in the lot of a stranger, and certainly more in consonance with the feelings of those who are bound closest to him by the ties of blood and longest affection. I mean to recognize the fact that circumstances may exist which should give the widow the preference over the son, but in this case I think the claim of the son is to be preferred.

The motion is granted.