Stockton *v.* Newark.

42   531
44   179

John P. Stockton, attorney-general, et al.,

*v.*

The Mayor and Common Council of the City of Newark.

The title to certain lands in the city of Newark is vested in the city, if vested at all, merely in trust for and subject to use as a burial-ground forever. —*Held,* that such use is perpetual, and that the city authorities cannot, under statutory authority, destroy it, and devote the lands to other purposes, for the original use is not subject to legislative revocation, and therefore the statute authorizing such destruction of the use is unconstitutional.

Bill for injunction. On order to show cause upon bill and answer.

*Messrs. Cortlandt & R. Wayne Parker,* for relators.

*Mr. Joseph Coult,* for defendants.

Note.—Whether the use of lands for a burying-ground is a public use for which lands may be taken under the right of eminent domain, see *Balch* v. *Comrs. of Essex, 103 Mass. 106;* *Edwards* v. *Stonington Cemetery, 20 Conn. 466;* *Evergreen Cemetery Assn.* v. *New Haven, 43 Conn. 234;* *Edgecumbe* v. *Burlington, 46 Vt. 218;* *Greencastle* v. *Hazlett, 23 Ind. 186;* *Begein* v. *Anderson, 28 Ind. 79;* *Deansville Cemetery Assn., 5 Hun 482, 66 N. Y. 569.*

Lands may be dedicated to the public for a cemetery, *Beatty* v. *Kurtz, 2 Peters 566;* *Hunter* v. *Sandy Hill, 6 Hill 407;* *Redwood Assn.* v. *Bandy, 93 Ind, 246;* *Boyce* v. *Kalbaugh, 47 Md. 334;* *Schoonmaker* v. *Ref. Prot. Church, 5 How. Pr. 265;* *Mowry* v. *Providence, 10 R. I. 52;* see *Hicks* v. *Danford, 47 Ind. 223;* *Sewall* v. *Cargill, 15 Me. 414;* *Com.* v. *Wellington, 7 Allen 299;* *Seymour* v. *Page, 33 Conn. 61;* *Hullman* v. *Honcomp, 5 Ohio St. 237.*

Lands had been dedicated by a city as a public cemetery, and conveyed to three trustees, whose deed, however, was never recorded. The cemetery was discontinued, some of the bodies had been removed and some remained, when the city, for a valuable consideration, conveyed the lands by quit-claim to one who knew of the dedication and use, and the conveyance was confirmed by statute.—*Held,* that the grantee held subject to the trust, and could not recover possession from the trustees, *Weisenberg* v. *Truman, 58 Cal. 63;* see *Chatham* v. *Brainerd, 11 Conn. 59;* *Bennett* v. *Criswell, 27 Hun 554.*

Where only a license to bury is given, its revocation extinguishes all future

Stockton *v.* Newark.

THE CHANCELLOR.

This suit is brought by the attorney-general, by information, at the relation of Henry Congar and others, and by the relators, as complainants, against the mayor and common council of the city of Newark, to establish a trust in certain land in Newark, known as "the old burying-ground," and to restrain the defendants from removing from that land the remains of persons buried there, and to compel the defendants to keep and maintain the ground in decent and proper order, so as to protect the remains and memorials therein from desecration. The bill states that the relators and complainants are citizens of Newark and heirs and descendants of the old settlers of the town of Newark, and they bring suit, not only for themselves, but also for the benefit of all such other citizens, heirs and descendants, as may be made parties, and for the protection of the charitable use to which the burying-ground was, as they allege, devoted. The bill states that on the 10th of December, 1696, shortly after the settlement of the town, the proprietors of the province of East New Jersey, in pursuance of the concessions to actual settlers thereof theretofore made by them, granted to John Curtis, John Treat, Theoph-

rights in the lot, except that of removing the bodies already interred there, *Partridge* v. *First Independent Church, 39 Md. 631; Rayner* v. *Nugent, 60 Md. 515; Windt* v. *German Ref. Church, 4 Sandf. Ch. 471; Richards* v. *Northwest Church, 32 Barb. 42.*

. Lands appropriated for a cemetery cannot be diverted for any use inconsistent therewith, as taking a portion thereof for a highway, *Harper* v. *Forbes, 5 Jur. (N. S.) 275; St. Johns* v. *Parishioners, 2 Rob. Ec. 515; Evergreen Cemetery Assn.* v. *New Haven, 43 Conn. 234; Hunter* v. *Sandy Hill, 6 Hill 407;* see *Lake View* v. *Letz, 44 Ill. 81; Browne* v. *Trustees, 37 Md. 108; Perkins* v. *Lawrence, 138 Mass. 361; Egypt Street, 2 Grant's Cas. 455; Commonwealth* v. *Dickinson, 30 Leg. Int. 53; Twenty-Second Street, 11 W. N. C. 465.*

Whether it may be assessed therefor, or for similar improvements, see *Broadway Baptist Church* v. *McAtee, 8 Bush 508; Louisville* v. *Nevin, 10 Bush 549; Baltimore* v. *Green Mount Cemetery, 7 Md. 517; Lockwood* v. *St. Louis, 24 Mo. 20; Lefevre* v. *Detroit, 2 Mich. 586; Albany Street Case, 11 Wend. 148; Buffalo City Cemetery* v. *Buffalo, 46 N. Y. 503; Olive Cemetery Co.* v. *Philadelphia, 93 Pa. St. 129; Northern Liberties* v. *St. John's Church, 13 Pa. St. 104; Lima* v. *Cemetery Assn., 42 Ohio St. 128;* see, also, *Sioux City* v. *Independent School District, 55 Iowa 150; Protestant Home* v. *Newark, 7 Vr. 478; First Presbyterian Church* v. *Fort Wayne, 36 Ind. 338.*

Stockton *v.* Newark.

ilus Pierson and Robert Young, of the town of Newark, certain parcels of land in Newark for public use, among which was a tract including the land in question, which tract is described in the deed as—

" All that small tract therein allotted for the burying-place, taking in the pond and meeting-house, being seven chains in length and four in width, bounded west by John Treat, south by John Johnston, north and east by high-ways."

That as to that land the grant was made and was in the deed declared to be made to the grantees and their heirs, to the only proper use, benefit and behoof of the old settlers of the town of Newark, their heirs and assigns, forever, in common, and that it was also therein declared that the land was granted to be and remain for the use in the deed expressed, and to be appropriated to no other use or uses whatever. The complainants allege that the greater part of that tract was then and thereafter used for and devoted to the use of a burial-place for the people of the town, those who settled the place—the old settlers—and their heirs and assigns, and that it has been reserved and kept

A stable and dwellings for the men employed in the cemetery is an inconsistent use, *People* v. *Cemetery Co.,* 86 *Ill.* 336.

And a building for the transaction of the business of the city which holds by dedication, *Rousseau* v. *Troy,* 49 *How. Pr.* 492.

A school-house is not an inconsistent use, *In re Bettison, L. R.* (4 *Ad. & Ec.*) 294; *Beatty* v. *Kurtz,* 2 *Peters* 566; *Pott* v. *Pottsville,* 42 *Pa. St.* 132; see *Rector &c.* v. *Stewart,* 2 *Str.* 1126; *Brown* v. *Lutheran Church,* 23 *Pa. St.* 495; *Jeffreys* v. *Pittsburgh* (*Pa.*), 26 *Alb. L. J.* 203; nor a church, *Schoonmaker* v. *Reformed Protestant Church,* 5 *How. Pr.* 265; *Price* v. *Methodist Church,* 4 *Ohio* 515; or chapel, *Reg.* v. *Twiss,* 10 *B. & S.* 298; or Sunday-school and lecture-room, *Craig* v. *First Presbyterian Church,* 88 *Pa. St.* 42; or mortuary, *Handsard* v. *St. Matthews, L. R.* (4 *Prob. Div.*) 46.

The legislature may, under the exercise of the police power, and for the sake of protecting the public health, control or prohibit the use of lands in the populous part of a city as a cemetery, or may authorize the city itself to exercise such power, *Sohier* v. *Trinity Church,* 109 *Mass.* 1; *Coates* v. *New York,* 7 *Cow.* 585; *Charleston* v. *Baptist Church,* 4 *Strobh.* 306; *New York* v. *Slack,* 3 *Wheeler's Cr. Cas.* 237; *Kincaid's Appeal,* 66 *Pa. St.* 411; *Craig* v. *First Presb. Church,* 88 *Pa. St.* 42; see *Reg.* v. *Justices,* 5 *El. & Bl.* 702; *Foster* v. *Dodd,* 8 *B. & S.* 842, *L. R.* (3 *Q. B.*) 67.

Stockton v. Newark.

for such purpose and has been known as "the old burying-ground," and that there have been buried in it, from time to time, deceased persons, people of the town, old settlers and their heirs and descendants, and that the memorials of such deceased persons have been erected there, and that some of them still remain ; that about the 15th of February, 1804, the legislature of the state, for the purpose of vesting the legal estate in the property upon the same trust and to the same use upon and to which it had been granted, passed an act by which it was recited that the inhabitants, the first settlers of Newark, on their first settlement, after purchasing all the lands lying within the bounds of the town, of the native Indians, proceeded to parcel them out among themselves and such settlers as thought proper at various times to settle in the town, according to the rules and regulations established by the first settlers respecting their admission, at the same time reserving certain portions of land in various parts of the town for public purposes ; and that doubts having arisen as to the validity of the Indian title, it was afterwards thought advisable by the inhabitants of the town to take a grant from the proprietors of East New Jersey for the confirmation of their

But such power cannot be used arbitrarily, *Lake View* v. *Rose Hill Cemetery Co.*, *70 Ill: 191 ; Reed* v. *Stouffer, 56 Md. 236.*

The measure of a lot-owner's compensation stated, *Partridge* v. *First Independent Church, 39 Md. 631; Kincaid's Appeal, 66 Pa. St. 411; see Ex parte Rector of Liverpool, L. R. (11 Eq.) 15; Ex parte Rector of St. Martin's, Id. 23.*

The remedy for the invasion of private rights in a burying-ground is in chancery, *Trustees* v. *Walsh, 57 Ill. 363 ; Boyce* v. *Kalbaugh, 47 Md. 334 ; Pott* v. *Pottsville, 42 Pa. St. 132 ; Hullman* v. *Honcomp, 5 Ohio St. 237; see Fay* v. *Milford, 124 Mass. 79 ; Richards* v. *Northwest Church, 32 Barb. 42 ; Pierce* v. *Proprs. of Swan Point Cemetery, 10 R. I. 227; and the owner of a lot may seek redress, Burke* v. *Wall, 29 La. Ann. 38 ; Brick Presb. Church Case, 3 Edw. Ch. 155, 4 Bradf. 503 ; Schroder* v. *Wanzor, 36 Hun 423 ; Moreland* v. *Richardson, 22 Beav. 596 ; Jeffreys* v. *Pittsburgh (Pa.), 26 Alb. L. J. 203 ; see Dolan* v. *Baltimore, 4 Gill 394 ; Reed* v. *Stouffer, 56 Md. 236 ; Windt* v. *German Ref. Church, 4 Sandf. Ch. 471 ; Craig* v. *First Presb. Church, 88 Pa. St. 42 ; Price* v. *Methodist Church, 4 Ohio 515 ; Close* v. *Glenwood Cemetery, 107 U. S. 466 ; St. Pancras* v. *St. Martin, 6 Jur. (N. S.) 540 ; and even a stranger may interpose, Reg.* v. *Twiss, 10 B. & S. 298 ; see Rousseau* v. *Troy, 49 How. Pr. 492 ; see, further, 19 Am. Law Reg. (N. S.) 65 ; 19 Am. Law Rev. 251 ; 12 Moak 656.—REP.*

rights to that public land, and that as the inhabitants of the town were not incorporated, and were incapable of taking a legal estate, it was thought advisable to take the grant in the names of certain trustees for the use of the inhabitants, which grant was accordingly taken on the 10th of October, 1696, in the names of John Curtis, John Treat, Theophilus Pierson and Robert Young, to have and to hold, to them, their heirs and assigns, forever, to the only proper use, benefit and behoof of the old settlers of the town, their heirs and assigns, forever, in common (the lands) granted, to be and remain to and for the several uses therein particularly expressed, and to be appropriated to no other use or uses whatsoever; that the original trustees were all dead, and the heir of the survivor not known to be resident in Newark, and that, through the ignorance of those infant times, the use created in the grant, although really meant for the benefit of the inhabitants of the town of Newark and their successors, yet was so inartificially expressed as to render it difficult for the then inhabitants of the town, as incorporated by law, to assert their rights to the premises; by means whereof the lands contained in the grant, and originally reserved by the first settlers for public purposes, were exposed to encroachments and other injuries, without a competent remedy therefor either in law or equity; and it was thereby enacted that the trust estate vested in the trustees, their heirs and assigns, forever, by the deed from the proprietors, for the only proper use, benefit and behoof of the old settlers of the town of Newark, their heirs and assigns, forever, should thenceforth cease and be void, and that the estate so vested in those trustees, their heirs and assigns, forever, should be vested in the inhabitants of the township of Newark, in the county of Essex, as incorporated by law, and their successors, forever; and that they were thereby vested with the legal title thereto as fully and absolutely as though they had been originally named in the grant in the place of the original trustees, saving the rights of *bona fide* purchasers without notice of the trust; provided that nothing in the act should in any way extend to or affect the parsonage lands described in the grant, or such parts of the burying-ground as had been leased or sold by the First Presbyterian

Church in Newark before the 1st of January then last, or the ground upon which the market then stood. And it was thereby further enacted that the estate vested by the act in the inhabitants of the township should be appropriated and forever remain to and for the several uses in the before-mentioned original patent (the deed from the proprietors) expressed, and for no other use or uses whatever.

The bill further states that in 1836 the city was incorporated, and thereupon, by force of the laws of this state, became subject to all the responsibilities of the township, and succeeded to the duties of the inhabitants of the township as trustees; that it thus obtained the legal title to the land in question, and that it was its duty to protect and preserve the property to the uses to which it was originally devoted, but that it has not only neglected its duty in that behalf, but now proposes to remove the remains from the ground and devote the land to use as a public market for the sale of meat and vegetables, and to let it out for hire for those purposes accordingly, and that its action in the matter is under an act of the legislature passed in 1886 and obtained by the city itself, by which it was enacted that where lands held by the cities or municipalities of this state for burial purposes are or may be affected by any trust that they shall be devoted to that use, and in the judgment of the common council or other governing body the public good will be served by devoting such lands to other public uses, it shall and may be lawful in every such case to use such lands for any public purpose or use to which, in the judgment of the common council or other governing body, they are best adapted; and that in case interments have at any time been made in such lands or any part thereof, the common council or other governing body shall cause the remains so interred to be removed to some suitable and proper burial place and make proper and reasonable provision therefor, and for the protection thereof and to that end may make such reasonable appropriation of public moneys as may be necessary. The bill attacks that act upon the ground that it is really a private, special and local law within the meaning of the constitution, and alleges that there are no other cities or municipalities

in this state, except the city of Newark, which hold land in trust for burial purposes; that no public notice was given of the intention to apply for the act nor of the object of it, and that the passage of the act was forbidden by the constitution of this state because of the want of such notice, and because the act vacates public grounds.

The answer states that the first settlers of Newark came there in May, 1666; that soon after they came they laid out the land, of which they had taken possession without leave or license, claiming it by occupation, and divided it among themselves into what they called home lots; that in order to secure a more perfect title, they bought the land from the Indians and took from them three conveyances therefor—one in 1666 and the others in 1667; that in laying out the town site they reserved streets, squares and public places for the common benefit of the people of the town; that among the portions so allotted was the tract set apart for a church and burial-place, and that that was common property; that soon after the settlement the only building for religious worship in the town was built upon the property, and that in accordance with the original design of the settlers the bodies of all the settlers who died were there interred, and that the property was common to all the inhabitants—the meeting-house for worship and the burying-ground for interment; that up to 1713 the form of government of the town was a pure democracy, in which all who lived in the settlement and were entitled to a vote were obliged to participate; that in that year the tract then known as the town of Newark was by royal patent created a township by the name of the " Trustees of the Freeholders and Inhabitants of the Township of Newark," and the government was thenceforward, to 1798, carried on under that charter; that · in the last-mentioned year the township was incorporated, and that the city was incorporated in 1836; that from the earliest settlement the land in dispute, or portions thereof, were used as a buryingground, and interments were made in it from time to time of the bodies of persons who were inhabitants of the town, but that it was always common property under the control of the public; that the settlers denied the right of the Indians, although

they took the before-mentioned deeds from them, and they denied the right of the proprietors, and they held possession for over thirty years before they took from the proprietors the deed mentioned in the bill, which they took as a merely confirmatory conveyance; that it was not intended that that deed should impose any unalterable trust upon the property in question or impress upon it a perpetual use, but the answer alleges the words relied upon in the bill to establish the use are merely words of description, denoting the use to which the inhabitants of the town had put the land, and were used in order to designate them with absolute certainty; that after the making of the deed of the proprietors the land continued to be used by the public in the same way and to the same extent as before that time, and that in consequence of the doubts which had always existed as to the right and title of the public thereto and to quiet the title, the act of 1804 was passed; that subject to such limitations as were by that act put upon its power, the city had a lawful right and full authority to take such measures as were expedient for the care and custody of the grounds and the preservation of the remains and monuments therein; that the tract lies in the heart of the city and is surrounded by the most populous and valuable portion of the city; that no interments have been made there for many years, and that on account of the peculiar situation and location of the property it has now become unsuitable for burials; that originally the whole of it was used in common by the people of the town for purposes of worship and interment, but as the land grew more and more valuable, encroachments were made upon the Broad and Market street fronts, which are now, with a small exception, covered with business buildings in which large amounts of money are invested; that in making such encroachments the persons who claim to be the owners of the buildings have actually erected them upon parts of the land in which interments were made, and that it has been impossible for the city to protect the property from desecration; that it has been and is now open to the common use of the public and is used as a rendezvous for immoral persons and as a depository for rubbish, and for a long time has been a public nuisance, and

that, by virtue of its general control over the grounds, and under the terms of the act of 1886, the city has determined that the general good of the community and all considerations of respect for the memory of the early settlers of Newark whose bodies are buried there, require that the use to which the premises have been so long devoted, should be determined, and that proper measures should be taken to care for the remains of those deceased persons and to perpetuate their memories; that the city proposes to re-inter the remains to be removed in an appropriate place and erect a suitable monument over them; that it proposes to occupy the land for a market, but only temporarily, and that it intends to get another place for such market hereafter and to relieve the land in question from use as a market-place.

It is evident, from the foregoing full statement of the main contents of the pleadings, that the city has no title to the land in question except such as it may have under the act of 1804, and the charter which provides that the mayor and common council and their successors shall, by virtue of the charter, become, and be absolutely and completely vested with, possess and enjoy all the lands, tenements, hereditaments, property, rights, causes of action and estate whatsoever, both in law and equity, in possession, reversion or remainder, which, at the time of the passing of the charter, were vested in the township as a corporation, according to such estate and interest as the township, as a corporation at the time of the passing of the charter, had, or of right ought to have therein. *P. L. of 1836 p. 185*, and *P. L. of 1857 p. 117*. If the title to the land was held by the township under the act of 1804 merely in trust for the purposes of the charity (use as a burial-ground), the city holds it in like manner, and upon the same trust. But it is urged by the answer that the city holds it, irrespective of the act of 1804, as public property generally, without the impress of a trust, or of devotion to any particular use upon it. This claim cannot be sustained. How did the city get title, if not under the act of 1804? And what title has it except such title? Before that act the title was in the grantees under the deed from the proprietors or the survivors or survivor of them, or the heir-at-law of the last survivor. If it

be conceded that the Indian title is valid, the city has no title to the land under it. If the land was dedicated to public use as a burying-ground by the old settlers, the power of the city over it under such dedication is (apart from the act of 1886) only for the protection and regulation of the public use. It cannot sell the land, nor release or extinguish the use for which the land was dedicated, nor employ it in any way variant from the purposes for which it was designed. *Trustees &c.* v. *Hoboken, 4 Vr. 13.* Under the act of 1804 the title was vested in the township as a corporation, to be appropriated and forever remain to and for the several uses expressed in the deed from the proprietors, and for no other use or uses whatever. The city, if it took the title under that act and its charter, took it subject to that provision, and with that trust impressed upon it. In *Montpelier* v. *East Montpelier, 27 Vt. 704,* it was held that land held in trust by the original town of Montpelier did not pass to the new towns of Montpelier and East Montpelier, created out of the territory of the original town (the court held that by force of the provisions of the act the original town ceased to exist), although the act. provided that all property then owned and possessed by the original town should be thereafter owned and enjoyed by the new towns in certain proportions. The city, then, if it holds the title in trust, holds it for the use of the property as a burying-ground, and for no other use whatever, unless the act of 1886 has given it power to abolish the use. That act is an act to destroy the trust. If it be conceded that there is no valid objection to it on the grounds mentioned in the bill (a subject which it is not necessary to pass upon at this time), and the act be regarded as a general law, it may be characterized as an enactment empowering the municipal authorities at will to destroy the trusts in all such cases. As such, it is, in my judgment, unconstitutional. It is not within the power of the legislature to abolish such trusts as that on which the city, if it has title to the old burying-ground, holds that property. It is established law that if a grant is made to a municipal corporation, charged with a trust in favor of an individual, private corporation or charity, the interest which the *cestui que trust* or beneficiary has under the grant may sustain it

against legislative revocation; a vested equitable interest being property in the same sense, and entitled to the same protection as a legal interest. *Cooley Const. Lim. 278.* In *Montpelier* v. *East Montpelier, 29 Vt. 12,* it was said that grants of property to municipal corporations in trust for other purposes than corporate and municipal use, are no more the subject of legislative control than are the private and vested rights of individuals.

It is urged on behalf of the city that this act may be supported under what is known as the police power of the legislature, by virtue of which it may, in order to protect the health of the public, exercise, directly or by delegating it to the municipality, the power of directing the removal of bodies from a graveyard. It is enough to say on this head that the act is not an exercise of that power. According to the answer, it may be remarked, no interments have been made in the ground in question for nearly sixty years. The act provides that when lands held by the cities and municipalities of the state for burial purposes are or may be affected by any trust that they shall be devoted to that use, and in the judgment of the common council or other governing body the public good will be served by devoting such lands to other public uses, it shall and may be lawful in every such case to use such lands for any public use to which, in the judgment of the common council or other governing body, they are best adapted. This is not a grant based upon the power to prevent or abate nuisances, but, construed as the defendants construe it, it is a gift of power to the common council or other governing body to put (entirely at their discretion) land granted to the municipality in trust for burial purposes, whether located in or out of the city or municipality, to any or other public use to which they may think it best adapted; and that, too, without reference to any consideration of the public health to justify it. Nor can it justly be claimed that in view of the fact that no interments have been made for so long a period—since 1829— the use has ceased. The object of burial is not to put the dead away temporarily, merely, but to place them in a final resting-place. When land is given in trust for a burial-place, it obviously can by no means be said that the trust is at an end when

Stockton *v.* Newark.

the last body which can be buried in it has been deposited. The expectation in the burial of the dead is that they are to remain permanently, and the unauthorized disturbance of their remains is regarded with abhorrence as a desecration, and is criminal. A trust for a burial-place devotes the ground to the perpetual repose of the remains of the dead. It dedicates it to uses of the most sacred character. The burying-ground is God's acre. In *Campbell* v. *Liverpool, L. R. (9 Eq.) 579,* by act of Wm. III., land belonging to the parish of Liverpool was set apart and dedicated to the use of a burial-ground, and by the sentence of consecration the corporation renounced all right to the land. In 1854 the ground was closed against burials by an order in council. In 1866 the corporation, being authorized to take a part of the ground under an improvement act, refused to pay for the land to be taken, on the ground that the land reverted to the corporation on the closing of the ground against burials, and that on such closing the use came to an end. It was held that the land had been dedicated forever to the use of a burial-ground, that there was no reverter to the corporation, and that the court would, if necessary, presume a conveyance of the legal estate. See, also, *Moreland* v. *Richardson, 24 Beav. 33.* Manifestly, the fact that the place in question has become a nuisance from the neglect by the city of its duty to take proper care of it, is no reason why the city should now be permitted to go still further and destroy the use altogether. By an act of March 3d, 1848 (*P. L. 1848 p. 152*), the fact that the city had authorized or permitted encroachments upon the ground was recognized, as also the fact that it derived revenue for such encroachments, and it was thereby provided that it should be the duty of the mayor and common council to protect and preserve the ground as then enclosed and the enclosures thereof. It may be added that the nuisances mentioned in the answer are all of them such as the city may prevent. A preliminary injunction will be allowed, according to the prayer of the bill.