Scribner, J.
Mrs. Sarah Holmes departed this life at the residence of the defendants, Matthew Bartlett and Josephine Bartlett, his wife, at Toledo, Ohio, on the 12th day of July, 1889. She was the widow of Robert Holmes, who died and was buried near the city of Pittsburg, in the year 1856. The plaintiffs and the said Josephine Bartlett are the only surviving children of the said Robert and Sarah Holmes. The deceased, Sarah Holmes, was buried from the residence of the defendants, Mr. and Mrs. Bartlett, and under their supervision, on Sunday, July 14, 1889, in a burial lot owned by the defendant Matthew Bartlett, situate in what is known as Forest Cemetery, a public cemetery held and controlled by the city of Toledo under and in conformity with the laws of the state and the ordinances of the city.
The deceased, Sarah'Holmes, was about eighty-seven years of age at the time of her death. She had been in poor health for a considerable period of time, and during the last two or three weeks of her life required constant care and attention, which were bestowed by the defendant, Mrs. Bartlett, with whom she had resided for several years prior to her death. Before taking up her residence with the Bartletts, Mrs. Holmes had resided at Toledo with her daughter, Mrs. Smiley, one of the plaintiffs, with whom she had macle her home for a good many years. There is a conflict in the testimony as to when the mother ceased to reside with Mrs. Smiley, the latter claiming that it was early in 1882, her dwelling house having burned at that time. The Bartletts claim, on the other hand, that it was earlier, but this is not material. From the time Mrs. Holmes became an inmate.of the Bartlett household, whatever may have been the exact date, until the period of her death in 1889, except during occasional intervals when she was absent visiting her old home *236 and her children and grandchildren at Pittsburgh, and friends and relatives in West Virginia, her home was with the Bartletts. Two of the plaintiffs, Amanda J. Barker and Anna C. Lehbarger, are residents of Pittsburgh. Stephen R. Holmes is a resident of Findlay, Ohio. Mary "A. Smiley lives in Toledo.
It appears in the evidence that owing to an unfriendly state of feeling unfortunately existing between the principal defendants and the plaintiffs, Shepley R. Holmes and Mrs. Smiley, these persons were not informed of the death of their mother until after the funeral had taken place, but the other near relatives were promptly advised of the event, and of the time and place of the funeral. Some of them came from a distance in response to the notification, and attended the funeral services.
This suit was brought August 12, 1889. Its object and purpose is to secure, through the equity powers of the court, the exhumation of the remains of Mrs. Holmes from the cemetery lot of the defendant, Bartlett, where they lie buried, and their removal to, and re-interment by the side of her deceased husband, in a cemetery lot owned by him at the time of his decease. This cemetery is situate near the city of Pittsburgh, Pennsylvania, the former home of Mr. and Mrs. Holmes and their family, and several other members of the family have been buried in the lot mentioned. This lot has ever since continued to be the property of the family. The defendant, Radbone is made a party as the Superintendent in charge of Forest Cemetery.
On the hearing of the cause in the court of common pleas the petition was dismissed, and it comes into this court by way of appeal.
The grounds of this application to the equity powers of the coui’t are substantially these :
1. That by the established rules of law, the next of kin of a deceased person have the right to the control, custody and burial of the body of such deceased, and that the plaint *237 iffs, being a majority of the surviving children of their deceased mother, are entitled to exercise snch right.
2. That it was the wish and request of the deceased, often expressed, that upon her death her remains should be placed beside those of her deceased husband in the family burial lot at Pittsburgh, before mentioned.
3. That such burial lot is the common property of the family, in which all have an interest, and to which all are entitled to access; whereas the cemetery lot in which the body is now buried, is the private property of the defendant Matthew Bartlett, who may, at will, prevent the plaintiffs from approaching or decorating the grave of their mother.
It is is also insisted that the defendant Mrs. Bartlett, has in fact all along desired, and still desires that the body of her mother should be placed by the side of her father’s remains, but that she is influenced and coerced by her husband to now express a contrary wish, and to contest this proceeding.
There is no doubt in our minds but that on the 10th day of July, 1889, two days before the death of her mother, Mrs. Bartlett, in. a letter of that date, addressed to her sister, Mrs. Barker, at Pittsburgh, expressed in strong terms a wish on her part, that their mother, whose death was then impending, should be buried beside her father at Pittsburgh ; and that she also stated in the same letter that it was her mother’s wish to be so buried. But in her answer to the petition of these plaintiffs, and in her testimony upon the stand, she declares it to be her present desire that the body of her deceased mother remain undisturbed in its present resting place, and that the prayer of the petition be denied.
As to the plaintiff Anna C. Lehbarger, whatever question may arise as to her having been fully informed of the situation before her name was used as a plaintiff herein —and upon the testimony there is some doubt as to this — she has since appeared, and so far as she is personally concerned, declined to proceed further in the controversy. She expresses herself satisfied to permit the remains of her mother He *238 where they have been buried. Practically, therefore, but three of the five next of kin are insisting upon this proceeding.
First — While it is true, as a general rule, that the next of kin have the right to the custody and burial of the body of their deceased relative, and therefore may select the place of burial, a different question arises where, as here, the next of kin are not agreed as to- the place of burial. Each has an equal right and an equal voice in this matter, and in the exercise of such individual judgment and choice, each might select a v different place for the burial. No mere majority can be permitted to control this choice. Said the court in the case of Lowrie v. Pitt, 11 Phila. Rep. 303 : “ Such a right (control over the remains) must necessarily be in the next of living kin. It is only the living who can give the protection, or be burthened with the duty of protection, from which the right springs. It is only the living whose feélings can be outraged by an unlawful'disturbance of the dead. From this it follows that it is a right which can not be transmitted or transferred. It is one, moreover, in which all the next of kin have an equal interest. The plaintiff, therefore, derives no authority over the remains from his mother’s will; and in himself he has no better claim than'his sister or brother. He is then, without the clear exclusive title which, alone is enforced by injunction.” See also this case reproduced, with note, in 25 Amer. Law. Reg., O. S. 155. We have carefully examined all the authorities accessible to us bearing upon this proposition, and nowhere find the doctrine above laid down questioned. See also, Regina v. Sharp, 7 Cox. C. C. 214.
If it happen, as here, that the next of kin disagree- as to where the place of burial shall be, the duty devolves upon the court, in the exercise of its best judgment, and with due regard to the rights of all the parties, to determine what, under all the circumstances, is the proper course to pursue. This power and discretion were exercised in the case o.f Snyder v. Snyder, 60 How. Pr. Rep. 368, where the court, among other *239 things, held: “ The person having charge of the remains holds them as a sacred trust, for the benefit of all who may, from family ties or friendship have an interest in them ; and in case of a contention, the court should assume the equitable jurisdiction over the subject, somewhat in analogy to the care and custody of infants, and make such a disposition as should seem to be best and fight under all the circumstances.”
We adopt these views as declaratory of the rule which should govern us in determining this case.
Second — While it is eminently right and proper that the expressed w.ishes of a deceased relative should be considered in determining the selection of the place of burial, especially where, as it is claimed, is the case here, a wife has made known her wish to be buried by the side of her deceased husband ; nevertheless this consideration is not to have absolutely controlling effect. In the present case, while the testimony clearly shows that for many years after her removal to Ohio, Mrs. Holmes frequently expressed to her friends and relatives a desire that upon her death, her remains should be removed to Pittsburgh and placed beside those of her. husband, the testimony also strongly shows that in later years she communicated to others, friends and relatives, including the defendant Matthew Bartlett, an earnest wish on her part to be buried at Toledo.
Third — A. suggestion, presented in the argument by counsel for the plaintiffs, enforcing in this regard certain allegations of the petition, struck us with much force. It related to the supposed power of the defendant, Bartlett, as the owner of the cemetery lot in which the remains of their mother are buried, to forbid the children from visiting the grave, and prevent them from decorating it. See Moak’s Note, 12 Eng. Rep. 654, 658 — 9. Upon reflection, we are of opinion, however, that this suggestion proceeds upon an erroneous view of the rights of Mr. Bartlett as a lot owner in the cemetery. The same difficulty might arise with reference to a burial place acquired by a portion, only, of the next "of kin. We think *240 that this matter is entirely within the control of a court of equity. See the opinion of the court in the case of Pierce v. Proprietors of Swan Point Cemetery, 10 R. I. 227. “ But the person having charge of it ” (the body) say the court in that case, “ cannot be considered as the owner of it in any sense whatever ; he holds it only as a sacred trust for the benefit of all who may from family or friendship ha%re an interest in it, and we think that a court of equity may well regulate it as such, and change the custody if improperly managed. So in the case of the custody of children, certain persons are prima facie entitled to their custody, yet the court will interfere and regulate it. Whe think these analogies furnish a rule for such a case, and one which will probably do most complete justice, as the court could always interfere in case of improper conduct, e. g., preventing other relatives from visiting the place for the purpose of indulgence of feeling, or testifying their respect or affection for the deceased.” And in 1 High, on Inj., 2d ed., sec. 853, it is said: “ The right of burial in a church yard, though conveyed by grant, is nevertheless considered .as an easement rather than a title to the freehold, and an injunction will not be allowed the owner to prevent such disposal of the soil and removal of the remains interred there as the court may have ordered on application of the church.” See also, Price v. M. E. Church, 4 Ohio, 515, Appendix.
We do not overlook the fact that before the funeral ceremonies had taken place, and promptly upon being informed of the death of Mrs. Holmes, Mr. Barker, the husband of one of the plaintiffs, telegraphed from Pittsburgh to Mrs. Bartlett directing that the remains should be forwarded to his address. To this Mr. Bartlett immediately replied by telegraph that all arrangements had been made for the funeral at Toledo,'and that he had so advised him. The funeral took place accordingly.
The deceased having long been a member of the family of Mr. Bartlett, and having died in his house, the duty and ob *241 ligation devolved upon him by the requirements of the law, and in the absence of other authorized arrangements, to provide for the burial. The Queen v. Stewart, 12 Adolph. & Ellis, 773; 40 Eng. C. L. 192. If we deal solely with the cold logic of the law, lie was under no legal obligation to provide for and advance the necessary expenses to be incurred in transporting the body from Toledo, Ohio, to Pittsburgh, Pennsylvania, especially upon the requirement of a person who sustained no other or different relation to the deceased than himself.
J. JJ. Ford and B. F. Reno, for plaintiffs.
J. M. Ritehie and Oharles Pratt, for defendants.
It appears satisfactorily from the proofs adduced on the hearing, that the deceased has been buried in a suitable and proper manner, in a locality to which, so far as its surroundings are concerned, no possible objection can be taken. We are reluctant to disturb the repose of the dead, and are profoundly impressed with the feeling that the mortal remains' of this aged’mother should be permitted to rest in peace. As was well said by Pratt, J. in delivering judgment in Seeor’s ease, 13 Leg. Int. 268 : “ A proper respect for the dead, a regard for the tender sensibilities of the living, and the due preservation of the public health require that a corpse should not be disinterred or transported from place to place, except under extreme circumstances of exigency.”
Our conclusion is that the petition should be dismissed, and it is so ordered.