(91 App. Div. 327.)

BUTLER v. BUTLER.

(Supreme Court, Appellate Division, First Department. February 11, 1904.)

1. CUSTODY OF CORPSE—ACTION—INJUNCTION—PENDENTE LITE.

In an action to permit the plaintiff to take charge of the body of his deceased father, as against his stepmother, where an injunction pendente lite has been issued restraining the defendant from interfering with the body, which lies in the receiving vault of a cemetery, the injunction should be continued without any order awarding the custody of the body till the final determination of the action.

Appeal from Special Term, New York County.

Action by George Howard Butler against Mary Egan Butler to permit the plaintiff to take charge of the body of his deceased father. From an order continuing an injunction pendente lite, re-

straining the defendant from interfering with the body, and award-ing the custody of the body to the plaintiff, defendant appeals.   Re-versed, and prior injunction order continued till the final determina-tion of the action.

Argued before VAN BRUNT, P. J., and HATCH, McLAUGH-LIN, O'BRIEN, and INGRAHAM, JJ.

Stephen J. O'Hare, for appellant.
W. H. Kinnear, for respondent.

HATCH, J.   It appears from the papers herein that Asahel Sew-ard Butler was married to Miss Gertrude Sweetser on the 27th day of October, 1874, by Dr. Storrs, in the Church of the Pilgrims, a Congregational church in the city of Brooklyn; that two children were born of the marriage—Marian Butler, and the plaintiff, George Howard Butler.   Marian Butler died in 1882, and was buried in a burial lot in Greenwood Cemetery according to the rites and forms of the Protestant Church.   Plaintiff's mother, Mrs. Gertrude But-ler, died on or about September 9, 1899, and was buried in the same lot by the side of her daughter.   This lot belonged to Asahel Seward Butler up to the time of his death.   Asahel Seward Butler remained single until he married Mary Egan on or about April 28, 1903..  They were married by a Roman Catholic priest in the city of New York.   Asahel Seward Butler died, intestate November 16, 1903, having been married about 6½ months.   Mary Egan Butler, the widow of the deceased, is a member of the Roman Catholic Church, and intends to bury his body in the Roman Catholic burying ground, under the rites of that church, against the protestations and wishes of the plaintiff.   The plaintiff avers that his father had told him many times that he desired to be buried in Greenwood Cemetery, by the side of his first wife and daughter, and that frequently during the past four years plaintiff and his father visited the family plot in Greenwood Cemetery, and that the father purchased flowers to strew upon the grave.   Anne Dudley Butler, a sister of deceased, stated that frequently since the second marriage of her brother he had stop-ped at her house on Sunday morning, and told deponent that he had been to place carnations upon his wife's grave—carnations having been her favorite flowers; that she had also heard her brother say that he wanted to rest in the lot in Greenwood Cemetery, as that was the only place he owned in the world.   The defendant, in her replying affidavits, states that prior to their marriage it was agreed that all the children of the marriage should be brought up in the faith of the Roman Catholic Church; that, as soon as he could inform himself, he desired to accept that faith; that pursuant to his directions she purchased books for him to read that would furnish him with infor-mation concerning the Roman Catholic Church and its doctrines, and that upon the day of his death he was regularly admitted into the communion and membership of that church.   After their marriage neither of them had contemplated his death, and that the subject of where he wished to be buried had never been mentioned between them.   Since the temporary injunction was served upon her, the fu-neral services had been held, and the body of her husband was rest-

ing in the receiving vault of the Roman Catholic Cemetery of Calvary, Long Island, N. Y., pursuant to the direction of said order. The court below made an order granting the custody of the body to the plaintiff, and from such order this appeal is taken.

It is claimed upon the part of the defendant that numerous authorities which she cites establish the rule that, in the absence of any direction or request by the deceased as to his place of burial, the law vests in the widow the absolute right to select the place of interment, and that such right is superior to the right of children; and in support of such proposition she relies upon Foley v. Phelps, 1 App. Div. 554, 37 N. Y. Supp. 471; Secord v. Secor, 18 Abb. N. C. 81; Mitchell v. Thorne, 57 Hun, 405, 10 N. Y. Supp. 682; and other cases. The learned court below was of opinion that such rule should not be applied in this case, but that the law as announced in Snyder v. Snyder, 60 How. Prac. 368, should be applied. This case, in substance, holds that the right to select the place of burial is not absolute in the wife under the circumstances mentioned, but that the determination is to be made, based upon the equities which the particular case presents. Adopting this rule, the court reached the conclusion that, as the deceased owned the burial plot in the cemetery in which the plaintiff desired that his body should be interred, such place should be selected, and to carry out such purpose the body was awarded to the custody of the plaintiff.

We do not find it necessary in the disposition of this appeal to determine the particular rule which should be adopted and applied; nor do we think the disposition of such question should be made until the trial of the action has been had. It is readily apparent that the religious convictions of an individual may furnish a controlling element in making selection of his final resting place. In the Roman Catholic Church the place of burial is held to be consecrated ground, and the belief in a future existence held by the members of that church makes the right of burial in consecrated ground a matter of serious concern. On the other hand, the deceased during his lifetime selected a lot, in which were interred the members of his family, and, what is a reasonable presumption at that period of his life, he contemplated being also buried therein. After the death of his first wife he expressed such intention, and continued to bestow upon the grave of his departed wife and child tender memorials of love and affection. While it is testified by the plaintiff and a sister of deceased that the deceased had expressed an intention of being buried in his lot, yet it does not clearly appear that he made expression of such intention after his marriage to the defendant; but that, on the contrary, he had proposed to become a communicant of the church to which she was attached, and did in fact partake of the communion prior to his death. Under these circumstances we think that the final disposition of the body of the deceased should await a determination of the trial of this action. The remains are now in the receiving vault of Calvary Cemetery. There they can remain without interference with the rights of the parties to this action until by solemn judgment, after all the proofs have been adduced, the final resting place of the body is decreed. This result was effectuated by

the injunction which was granted at the time of the commencement of the action. Such order and its operative effect should not be disturbed at this time.

We therefore reach the conclusion that the order should be reversed, and the prior injunction order continued in force until the determination of the action. Ten dollars costs and disbursements to the appellant. All concur.