## SUPREME COURT.

JOHN SLOSSON agt. LOUISA LYNCH, Administratrix, &c.

The words "next of kin," used *simpliciter* in a deed or will, mean next of kin according to the statute of distributions, including those claiming *per stirpes* or by representation.

*The English cases of Elmsley agt. Young,* 2 *Mylne & Keen,* 780; *and Witty* agt. *Mangler,* 4 *Beaven,* 358, *affirmed by the House of Lords,* 10 *Clark & Finnelly,* 215, *holding that the words "next of kin," used simpliciter, are to be taken to mean "nearest of kin," disapproved.*)

*New York General Term, November,* 1864.
*Before* LEONARD, *P. J.,* BARNARD *and* SUTHERLAND, *Justices.*
APPEAL from judgment at special term.

> WM. M. EVARTS, *for the defendants and appellants,* Jonathan Ogden, John A. Kernochan and Charlotte W., his wife, and Henry P. Kernochan and Grace W., his wife.
> DANIEL LORD, *for the defendants,* Goelet and Joseph Ogden.

By the court, SUTHERLAND, J. The subject of the deed of settlement was wholly personal property. By the deed of settlement, Mrs. Lawrence was to have the income for life, with a certain power of appointment by will or otherwise, in the event of her death before that of her husband, and in the absence of any appointment, then the property was to go to her issue then living, and the children of such as might be deceased, *per stirpes* and not *per capita,* and in default of such issue "to the next of kin of the party of the first part," Charlotte E. Ogden, afterwards Mrs. Lawrence. Mrs. Lawrence died before her husband, without issue, and without having made any appointment.

At the time of the execution of the settlement, Mrs. Lawrence had neither father, mother, nephews or nieces, but she had two sisters, Sarah Goelet and Grace W. Ogden, and one brother, Jonathan Ogden. The two sisters sur-

Slosson agt. Lynch.

vived Mrs. Lawrence, but the brother died before she did, leaving three children, the defendants, Jonathan Ogden, Charlotte W. Kernochan and Grace W. Kernochan.

The question was whether these children of the deceased brother were entitled to share in the distribution of the fund. The court below held as a conclusion of law, that the two sisters of Mrs. Lawrence were alone entitled to the fund, and that the children of the deceased brother took nothing. From this judgment the defendants Jonathan Ogden, Charlotte W. Kernochan and Grace W. Kernochan (their husbands joining), have appealed. It is evident that the sole question is as to the meaning of the words next of kin, in that clause of the settlement limiting the property to the next of kin, in default of appointment and of issue. Had we not been referred to certain comparatively recent English cases (*Elmsley* agt. *Young*, 2 *Mylne & K.* 780; and *Witty* agt. *Mangler*, 4 *Beavan*, 358), affirmed by the House of Lords (10 *Clark & Finnelly*, 215), holding that the words "next of kin," used *simpliciter*, are to be taken to mean "nearest of kin," I should probably have stated the question in the principal case to be whether the words "next of kin," were used in the settlement in their technical statutory sense, or meant nearest of kin; and then, assuming that the words "next of kin," used *simpliciter*, had a well known technical statutory meaning, I should have contented myself with saying that there being nothing on the face of the instrument, or in the context, to show that the words were used in a sense other than the technical statutory sense, it was to be presumed the parties used them in that sense.

Though the English decisions referred to are not obligatory upon us, yet respect for so high authority prevents me from assuming that the words "next of kin," used *simpliciter*, in a limitation or disposition of personal property by voice or deed, have any technical statutory meaning, and I will therefore state the question in the principal case

to be whether the words "next of kin," in the limitation by the deed of settlement in default of, issue, and of the exercise of the power of appointment, mean nearest of kin ? By stating this to be the question, I do not assume that the words "next of kin," used *simpliciter*, have a technical meaning, but I undertake to show that they have a technical statutory meaning, and that this meaning is not the nearest of kin, but those of the kindred or relations by blood, who in cases of intestacy, by the statute of distributions, succeed to or share in the intestate's personal property ; and that the words "next of kin," and the word "distributees," under the statute, are not synonymous, but that the words "next of kin," mean such of the distributees as are of the kindred or relations by blood. It may be well to refer to a few of the established rules in construing wills and other instruments disposing of or limiting property, before examining the question in the case.

1. They are to be construed so as to carry into effect the intent of the parties, to be gathered from the whole instrument, so far as such intent can by law be carried into effect.

2. Words are to be taken in their ordinary popular meaning, and the intention is not to be defeated by the use or misuse of technical terms.

3. Nevertheless if technical terms are used, it will be presumed that they are used in their technical legal sense, unless the context shows that they were intended to be used in a different sense. (*De Kay* agt. *Irving*, 5 *Denio*, 646 ; *Lane* agt. *Lord Stanhope*, 6 *T. R.* 352 ; *Hodgson* agt. *Ambrose, Douglas*, 337.)

In the principal case there is certainly nothing in the context to show that the words "next of kin," in the limitation to the "next of kin," were not used in their strict technical legal sense, if they had any. On the contrary, I think the use of the words "or other next of kin," in mentioning the objects of the power of appointment, and the use

of the technical term *per stirpes*, and not *per capita*, in the limitation to the issue of Mrs. Lawrence, and the children of such as may be deceased previously, in the same sentence, tend to indicate that the words " next of kin," in the limitation to the next of kin were used in a technical sense, if they had any. The question then is, whether the words "next of kin," simply had or have the technical meaning above stated. I think it may be said that they have had this technical meaning since the statute of distributions (22 *and* 23 *Car. II, c.* 10), and that this statute originated and gave this technical meaning to them. The word next, as used in the sixth section of the statute, was not used to express near or nearest alliance by blood to the intestate, but next in place or order, to or after children and their representatives, previously mentioned in the section. The truth is that the word next, as an adjective, is rarely if ever used even in conversation, to express nearness or degree of nearness by blood or affection, between another person and the speaker, except as next after, next in order or degree to some other person previously mentioned. Certainly if one should hear a person call another his next friend, he would not by these words unexplained, understand his near or nearest, dear or dearest friend by affection, without reference to any other person, but he would probably understand his next door neighbor, or a friend next in place, time or degree, to or after some other friend, or technically his " next friend " in some legal proceeding. I suppose it will not be denied that the words " next friend," have acquired a technical meaning, which originated in a very old statute.

The word next was not used in the statute of distributions to express the relationship or the degree of relationship by blood to the intestate, but as between the children and their representatives, and other kindred of the intestate, the order in which the kindred should succeed to or share in the personal estate. The children and their representatives are not expressly called kindred in the statute, but

they are impliedly called so, and so are the legal represent-
atives of the "next of kindred," within a certain limita-
tion. Now considering that previous to this statute there
appears to have been no way of enforcing the distribution
of estates of intestates ; that the administrator could keep
the whole surplus (*Edwards* agt. *Freeman*, 2 *P. Wms.* 447,
448 ; 2 *Black. Comm.* 515) ; that the statute may therefore
be said to have first given the right of distribution ; that
the statute regulates the distribution as between the widow
by the term wife, and the kindred, and then the order in
which kindred shall take or share ; first, children and their
representatives, and then the next kindred in equal degree,
and their representatives, within a certain limitation, and
that the statute probably originated the principle of repre-
sentation in the succession to personal estates of intestates,
is it not plain as the word heir or heirs acquired its technical
legal meaning, from the act or fact of the succession to estates
of inheritance (*ex hereditate*) by descent, that is by law, so
the words " next of kindred," or " next of kin," taken from
the statute of distributions, would be likely after the stat-
ute to acquire a technical legal meaning from the act or
fact of succession under or by the statute, and that this
meaning would be likely to be not synonymous with distri-
butees under the statute, but the kindred or blood relations
(including those claiming by representation, but excluding
a widow as such), who in fact had the right of succession,
or the right to share in the distribution by the statute.

The whole history of the administration of this statute
of distributions, and of the statute 1 *Jac. II, c.* 17, altering
it in certain respects, and of our statutes of distribution
(1 *R. L.* 313, §16 ; 2 *Rev. Stat.* 96, § 75), shows that the
words " next of kin," have acquired this technical meaning.
The cases holding that the widow as such, is not included
in these words used *simpliciter*, nor the husband, where the
wife has a power of appointment to her next of kin, simply
show that the words " next of kin," have acquired this

technical meaning.   (*Green* agt. *Howard*, 1 *Bro. Ch. R.* 29 ;
*Watt* agt. *Watt*, 3 *Ves.* 244 ; *Garrick* agt. *Lord Camden* 14
*Ves.* 381, 382 ; *Baily* agt. *Wright*, 18 *Ves.* 49 ; *Wilson* agt.
*Frazier*, 2 *Hump.* 30 ; *Wright* agt. *Meth. Epis. Ch. Hoffman*,
212, 213.)

No doubt these words have been used frequently as
meaning distributees generally, including the widow, when
there was no occasion to discriminate as to the description
or character by which the distributee or distributees
claimed, but when thus used, they were used in a secondary,
statutory and technical sense.   I doubt whether it can be
said that these words have ever acquired an ordinary, pop-
ular meaning, synonymous with nearest relations or nearest
of kin.   As was pertinently said on the argument, no one
speaks of his or another's dearest next of kin.   Any one
would be surprised to hear a sane person say such a one
has a next of kin born, or another next of kin born, or
has a certain number of next of kin.   There has been no
occasion (the wants of the language have not required)
that the statutory word next should supplant or be used
instead of the word near or nearest, to express close or
closest alliance by blood or affection to the speaker.   The
philosophy of language shows that one word is much more
likely in course of time to acquire a secondary and a variety
of secondary (if the expression is permissible) meanings than
three words, used in connection in a particular manner and
for a particular purpose in a statute, neither of which could
be dropped without destroying their statutory meaning.

It is easy to see how the word heir or heirs, came to have
a secondary, and perhaps more than one secondary meaning.
First, you have heir or heirs, meaning he or they, who suc-
ceed to estates of inheritance by descent by law ; then you
have heir or heirs, apparent or presumptive, and then you
have heir or heirs, with the word apparent or presumptive
dropped, meaning a living child or children.   No one would
be surprised at the remark that A. B., his neigbor, has an

heir, or another heir, or a certain number of heirs.   I think it may be said that all of the English cases prior to *Elmsley* agt. *Young* (2 *Myl. & Keen.*), before mentioned (in 1835), tended to show that the words "next of kin," used *simpliter*, in a will or deed, disposing of, settling or limiting personal property, had this meaning.   I am certainly safe in saying that this was the first decision to the contrary.   In *Roach* agt. *Hammond* (*Prec. in Ch.* 401), the devise was to H. of all the testator's personal estate, for the use of his relations, without specifying any in particular, or using any other word ; and it was decreed that those relations . (as I understand the report of the case) who by the statute of distributions would be entitled to personal estate in case the testator had died intestate, should take the property in the same proportions.

In *Thomas* agt. *Hole* (*Cases in Eq. in temp. Talbot*, 251), there was a bequest of £500 to the relations of Elizabeth Hole, to be divided equally between them.   At the testator's death, Elizabeth Hole had two brothers living, and several nephews and nieces.   It was determined first, that the word relations should be confined to such relations as were within the statute of distributions ; and next, as the testator had directed the £500 to be divided equally among them, that the brothers, nephews and nieces take *per capita.* This decision appears to have governed the decisions in *Edge* agt. *Salisbury* (*Ambl.* 70), and *Isaacs* agt. *Defriez* (*Ibid,* 595), where the words were "poorest relations ;" *Widmore* agt. *Woodroffe* (*Ibid,* 636), where the words were "the most necessitous of my relations;" *Harding* agt. *Glynn* (1 *Atk.* 469) ; *Winthorne* agt. *Harris* (2 *Ves.* 527), where the words were "near relations ;" *Green* agt. *Howard* (1 *Bro. Ch. R.* 28, *Perk. ed.*), where the words were, "to my own relations who shall then be alive, share and share alike ;" *Phillips* agt. *Garth* (3 *Bro. Ch. R.* 64), where the words were, "to be divided among next of kin, share and share alike ;" *Raynor* agt. *Mowbray* (*Ibid,* 234), where

the words were, " to and among all and every such person and persons who shall appear to be related to me only, share and share alike; *Loundes* agt. *Stone* (4 *Ves.* 649), where the gift was of a residue to the testator's " next of kin or heir at law, whom I appoint my executor " (the testator in this case leaving one brother, and by deceased brothers a niece and several nephews, one of whom was his heir at law, and distribution according to the statute being decreed); *Vaux* agt. *Henderson*, reported in note to *Horseman* agt. *Henderson* (1 *Jac. & Wal.* 387), where there was a legacy to A., " and failing him by decease before the testator, to his heirs," and A. dying before the testator, the legacy was decreed to belong to the next of kin of A. living at the time of the testator's death; *Stamp* agt. *Cooke* (1 *Cox*, 230), where the words were, " next relations," coupled with words tending to show that the testator meant by " next relations," sisters, nephews and nieces, and where Lord KENYON expressly said, if a testator makes a bequest to his " next of kin," and stops there, the statute was the rule to go by; *Hinckley* agt. *McLaurens* (1 *Myl. & Keen*, 27), where the words were " next of kin," used *simpliciter*, in a gift over, and where it was held that these words, without any explanatory context showing a different intent, must be taken to mean next of kin according to the statute of distributions.  Of these cases, the last and *Phillips* agt. *Garth* (3 *Bro. Ch. R.*), are directly in point, for in these cases the words " next of kin," were used *simpliciter*, and without any words qualifying them, as descriptive of the object or objects of the gift.  It will be recollected that in *Phillips* agt. *Garth*, the words were, " to be divided among next of kin, share and share alike."  Justice BULLER held that the gift should be divided *per capita*, and not *per stirpes*, among surviving brothers, and nephews and nieces, representing deceased brothers and sisters, because the gift was to " next of kin, share and share alike," but I do not see that this holding impeaches the

decision as to the technical meaning of the words "next of kin." The words "share and share alike," did not qualify the words "next of kin," as descriptive of the objects of the gift. It is probable, however, that the holding that the brothers, nephews and nieces should take *per capita*, led to the doubting remarks (*Brandon* agt. *Brandon*, 3 *Swanst.* 319 ; *Garrick* agt. *Lord Camden*, 14 *Ves.* 385 ; and *Smith* agt. *Campbell*, 19 *Ves.* 404) about the decision in *Phillips* agt. *Garth*, but those cases did not call for such doubts. In *Brandon* agt. *Brandon*, the words of the marriage settlement were, "to the nearest and next of kin" of the wife. In *Garrick* agt. *Lord Camden*, the words of the residuary clause of the will were, "to be divided amongst my next of kin, as if I had died intestate." In *Smith* agt. *Campbell*, the words of the bequest were, "to my nearest surviving relations in my native country, Ireland." In none of these cases were the words "next of kin," used without qualifying words. In *Brandon* agt. *Brandon*, the word nearest may be said to have qualified the words "next of kin;" in *Smith* agt. *Campbell*, the words "surviving relations," were qualified by the word nearest, and the subsequent words. The very question in the principal case is whether the words "next of kin," used *simpliciter*, mean nearest of kin, and that was the question in *Elmsley* agt. *Young* (2 *Myl. & K.* 780), reversing the decision of the master of the rolls in the same case (*Ibid*, 82), and overruling *Phillips* agt. *Garth*, and *Hinckley* agt. *McLaurens*. In *Garrick* agt. *Lord Camden*, the additional words, "as if I had died intestate," left no room for doubt. If in the principal case, the words "as if she had died intestate," had been added to the words "the next of kin of the said party of the first part," we never should have had this case before us. In 1 *Maddock*, 31, *Anonymous*, and in *Wimbles* agt. *Pitcher* (12 *Ves.* 433), where the words were, "next of kin in equal degree," the decisions went upon the additional words in equal degree. In

*Colton* agt. *Scarancke* (1 *Maddock*, 35), where the words in a limitation by settlement were, " to the next of kin of the said Anne Parr, her own blood and family, as if she had died sole and unmarried," it was held that the next of kin took as under the statute of distributions.

I will refer to a few cases prior to *Elmsley* agt. *Young*, where other general words were used as descriptive of the object or objects of the limitation, devise or bequest.   In *Robinson* agt. *Smith* (6 *Simons*, 47), the testator bequeathed £700 to his daughter's husband, his executors, &c., in trust, to pay the interest to his daughter, for her separate use for life ; after her death to such persons as she should appoint by will, and in default of appointment to " her personal representatives ;" and it was held that her next of kin, to the exclusion of her husband, were entitled to the £700 (*see also Baines* agt. *Otley*, 1 *Simons*, 465).    In *Crosby* agt. *Clare* (*Ambl.* 397), and *Parsons* agt. *Baker* (18 *Ves.* 476), the general word was descendants, but that was qualified by other words, so as to show that a class of descendants was meant.    In neither of these cases was there any question of claiming by representation.    In *Butler* agt. *Stratton* (3 *Bro. Ch. R.* 367), the legacy was to the descendants of A. and B. equally, and it was held that the children and grandchildren took *per capita*.    In *Wright* agt. *Alkyns* (1 *Tur. & Russ.* 143), it was held that under an immediate devise to A. for life, remainder to " my family," the heir at law of the testator is entitled in remainder (*see the opinion of the Lord Chancellor in this case*, 158 *to* 164).

I think it may be said that not one of the cases prior to the decision in *Elmsley* agt. *Young* (2 *Myl. & K.* 780), interferes with the decisions in *Phillips* agt. *Garth* and *Hinckley* agt. *McLaurens*, but that most of them tend forcibly to support these decisions ; but it is not to be denied that as the views of the LORDS COMMISSIONERS in *Elmsley* agt. *Young*, were affirmed by the HOUSE OF LORDS in *Witty* agt. *Mangler* (10 *Clark & Finnelly*, 215), it may be said to be now estab

lished in England that the words "next of kin," when used *simpliciter*, as descriptive of the object of a bequest or of a limitation of personal property in a marriage settlement, without any reference to the statute of distributions, or any words in the context to show a different meaning, must be taken to mean "nearest of kin," but Lord CAMPBELL said in substance, that he concurred in this decision with great reluctance ; that they were driven to put a construction upon the terms "which could not by possibility have entered into the contemplation of the parties, or the gentleman who framed" the settlement ; that the law had "by some bad luck got into a strange state," and that upon the whole, it seemed to him that greater mischief would ensue "from shaking or overturning that case of *Elmsley* agt. *Young*, than by adhering to it." He further said : "If I had to decide *Elmsley* agt. *Young*, I should certainly have hesitated a good deal before I came to the decision that was pronounced by those very learned judges, the then LORDS COMMISSIONERS."

I think the decision in *Elmsley* agt. *Young*, by the LORDS COMMISSIONERS, shows that the greatest judicial mind is liable to fall into a rut, and when it does, common sense teaches that its very load of learning tends to keep it in. In my opinion there is nothing in the opinions of the LORDS COMMISSIONERS in *Elmsley* agt. *Young*, or in the opinion of Lords COTTENHAM and CAMPBELL, in *Witty* agt. *Mangler*, which shows that the decisions in these cases should be adopted or followed here. I am not aware of any case in this state deciding the question in the prinipal case. The last sentence in the second paragraph of the head note in *Wright et al.* agt. *Trustees of Methodist Episcopal Church* (*Hoffman's Ch. R.* 202), is wholly unauthorized. It was not decided in the case, and there was no occasion to decide that the phrase "next of kin," when used *simpliciter*, does not mean those entitled under the statute of distributions, but the next in blood. It was held in that case

that the legacy to Euphemia Murray did not lapse, but that her next of kin took. She left children, but no grandchildren. There was no claim by representation or *per stirpes.* Vice-Chancellor HOFFMAN refers to the decision of the LORDS COMMISSIONERS in *Elmsley* agt. *Young,* but he says that the decision did not interfere with his decision, and it clearly did not.

In *Drake* agt. *Pell* (3 *Edward's Ch.* 251), the words "heirs, devisees, or legal representatives of the child so dying," were held to mean "next of kin" of the child so dying, the subject of the gift being money. There was no claim *per stirpes* or by representation, in this case. In *Dominick* agt. *Sayre* (3 *Sandf. Sup. Ct. Rep.*), there was a devise by Dominick of eight lots of land to the testator's daughter Margaret, for life, with power to give the same by deed or will to any of the main descendants of the testator's family of the name of Dominick. The daughter by her will devised the lots to male descendants of the testator by the name of Dominick, and among them she gave to her nephew John Jacob, son of her deceased brother Jacob F., two of the lots. The nephew died before his aunt, whereby the devise to him lapsed, and thereby the legal estate to the two lots became vested in the residuary devisees of the original testator and their heirs, subject to the execution by the court of chancery of the power so given to the daughter. The only male descendants of the family of the testator of the name of Dominick, were, as I understand the facts, grandsons of the testator, and sons of two of the grandsons, and it was held that all the male descendants were entitled to take *per capita,* and not *per stirpes.* This decision was, probably right, for it might be said that the power of appointment given to the daughter was limited to a class of the testator's descendants, that is, his male descendants of his family by the name of Dominick; but I have no. hesitation in saying that in my opinion, a devise to A. B. for life, remainder to his descendants or to "my

descendants," *simpliciter*, should and would be held to be a devise to A. B. for life, remainder to the heirs at law of A. B., or of the testator. In either case I think the word descendants would be held to mean "heirs at law;" whether the heirs at law would be deemed to take by descent or under the devise, is another question. Since the statute (3 *and* 4 *William IV*, *c.* 106), no doubt in England 'the heir would be deemed to take in the character of devisee (*see* 4 *Kent's Com.* 5th ed. 412, *note c*).

In *Phyfe* agt. *Phyfe* (3 *Bradford*, 45), there was a bequest to sons "and their legal representatives," adding "the legal representatives or children of my said sons to receive such part only," &c., and it was held that the words "legal representatives," meant the children, and not the "next of kin" of the sons, and that substitution was not intended beyond the children of the sons. This decision evidently went on the additional words "or children," &c (*see also Barstow* agt. *Goodwin*, 2 *Bradford*, 413). In *McCullock* agt. *Lee* (7 *Ohio*, 15), the question was between the mother and aunt of a child, under a statute regulating the descent of lands. The words of the statute were: "If there be no brothers or sisters, or their legal representatives, the estate shall pass to the next of kin, and of the blood of the intestate," and it was held that the mother took. I do not see how it could have been held otherwise, considering the additional words, "and of the blood," &c., and the extraordinary use of the words "next of kin," in a statute regulating the inheritance of lands. See also *McNeilledge* agt. *Galbraith* (8 *Serg. & R.* 40), and *McNeilledge* agt. *Barcly* (11 *Serg. & R.* 103), where the devise of real and personal property was to testator's wife, "and at her decease to be divided between hers and my poor relations equally."

It is evident that all that has been said about the English statutes applies to our statutes of distribution, especially to our present statute (2 *Rev. Stat.* 96, 97, § 75), which was worded with much more precision and distinctness than

the English statute.   Perhaps the remark in the fore part of this opinion, that the English statute of distributions originated and gave a technical meaning to the words "next of kin," requires explanation.   I meant that the statute originated and gave the technical meaning contended for, with reference to the succession to or the distribution of the personal property of intestates; I did not mean that the statute originated the phrase next of kin.

- A statute of 31 Edward III, provided that in cases of intestacy " the ordinaries shall depute of the next and most lawful friends of the dead person intestate, to adminter his goods."   Lord COKE in *Hensloe's case* (9 *Coke*, 39), speaking of the statute says, " next and most lawful friends," meant the next of blood.   The statute of 21 Henry VIII, chap. 5, provided that in case any person die intestate, or that the executors named in any testament refused to prove it, the ordinary should grant administration " to the widow of the deceased, or to the next of kin, or to both, as by the discretion of the ordinary shall be thought good."   Lord COKE in speaking of this statute in *Hensloe's case*, just cited, says that it gave power to the ordinary to commit administration to the next of blood; but how palpably unauthorized the conclusion (*Cooper* agt. *Denison*, 13 *Simons*, 295, 296) from this that long after the statute of distributions, the words next of kin and next of blood, were synonymous; the very point insisted on being that the words next of kin, were likely to acquire and had acquired a technical meaning in consequence of that statute.

It is not probable that Miss Ogden, when she executed the settlement, thought of the meaning of the words "next of kin."   It was natural that she should think of her anticipated issue and their children.   She takes care of them by a special limitation.   If she thought of her brothers and sisters, why did she not take care of them by a special limitation?   It is evident that the settlement was drawn with technical precision, by one well acquainted with the

technical meaning of legal terms and phrases. He must be presumed to have inserted the words "next of kin," in the limitation, to "the next of kin of the said party of the first part," with knowledge of their technical meaning, if they had any, and the parties by their execution of the settlement must be presumed to have adopted them with such technical meaning ; and as I cannot say that I have a doubt that those words used *simpliciter*, meant and mean next of kin, under or according to the statute of distributions, including those claiming *per stirpes*, or by representation, my conclusion is that the judgment of the special term should be reversed, with costs of all parties to be paid out of the fund to be distributed, and that we should declare that the defendants, the three children of Mrs. Lawrence's deceased brother, are entitled to the share of the fund which their father would be entitled to were he living. We would not be justified in rendering blind obedience to authorities however respectable or high, which have neither the force of constitutional obligation, nor state nor national judicial precedent or approval.

I will say in conclusion, partly by way of excuse for this rather elaborate examination of a question which unembarrassed by cases would appear to be so simple, that I find in a deservedly popular law dictionary (Burrill's) the words "next of kin," defined first and most prominently "nearest of blood" (*prochein du saunk*); and even Judge Story, in his *Eq. Juris.* (*vol.* 2, § 1065, *b*), says, "next of kin" is sometimes construed to mean "next of blood, or nearest of blood," citing *Witty* agt. *Mangler* (10 *Clark & Fin. supra*), without one word of comment, or of approval or disapproval.