THE NEW YORK LIFE INSURANCE AND TRUST COMPANY, Respondent, v. HENRY S. HOYT and PHILIP SCHUYLER, as Executors of MARGARET A. HAMILTON, Deceased, HENRY S. HOYT and GERALD L. HOYT, as Executors of GERALDINE L. HOYT, Deceased, Respondents, and MARY RAY DE COURVAL, Appellant, Impleaded with Others.

1. CONSTRUCTION — "HEIR" — "NEXT OF KIN." While the word "heir" is, under special circumstances, held to include "next of kin," the latter phrase is never held, when standing alone, to include heirs at law.

2. TRUST DEED — DIRECTION FOR DISTRIBUTION OF TRUST PROPERTY INCLUDING REAL ESTATE AMONG NEXT OF KIN EXCLUDES HEIRS AT LAW. Where a trust deed directs the trustee, in a certain contingency, to distribute "the sums hereby conveyed in trust among the next of kin of the parties of the first part according to the Statute of Distributions of the state of New York," and there is nothing in other parts of the deed to control the intention which the literal force of the phrase used necessarily imputes to the settlors of the trust, distribution of the property covered by the trust and by the direction, even if it consists of real as well as personal estate, is to be made exclusively among the class of next of kin as ascertained by the Statute of Distributions; and the proceeds of the real estate are not to be distributed among another class of persons, who, under another statute, would take as heirs at law.

N. Y. Life Ins. & Trust Co. v. Hoyt, 31 App. Div. 84, affirmed.

(Argued October 19, 1899; decided November 21, 1899.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the first judicial department, entered July 9, 1898, affirming a judgment entered on the report of a referee.

1

The nature of the action and the facts, so far as material, are stated in the opinion.

*Edmund L. Baylies* and *Joseph W. Welsh* for appellant. It was not the intent of James B. Livingston and Lewis H. Livingston, the settlors in the deed of 1876, to include any particular property under the trusts thereby created. It was their intention that said deed should specify only the value or the amount of the principal which was ultimately to be received by the trustee therein named. (*Matter of N. Y. C. R. R. Co.*, 49 N. Y. 419; *Dodge* v. *Zimmer*, 110 N. Y. 43; *Springsteen* v. *Samson*, 32 N. Y. 703; *Howard* v. *Rodgers*, 4 H. & J. 281; *Zimmer* v. *Settle*, 124 N. Y. 42; *Robinson* v. *Fiske*, 25 Me. 401; *Ford* v. *Beech*, L. R. [11 Q. B.] 866; *Field* v. *Leiter*, 118 Ill. 26; *Nash* v. *Towne*, 5 Wall. 689; *B. & O. R. R. Co.* v. *Brydon*, 65 Md. 215.) The deed of 1876 did not effect an equitable conversion of the real property into personal property, because it was not the intention of the settlors in 1876 to create a trust in personalty alone. (*Gourley* v. *Campbell*, 66 N. Y. 170; *Parker* v. *Linden*, 113 N. Y. 28; *White* v. *Howard*, 46 N. Y. 144; *Chitty* v. *Parker*, 2 Ves. 271; *Chamberlain* v. *Taylor*, 105 N. Y. 185; *Hobson* v. *Hale*, 95 N. Y. 588; *Scholle* v. *Scholle*, 113 N. Y. 261; *Curling* v. *May*, 3 Atk. 255.) The use of the term " next of kin " in the disposition by the trust deeds of both real and personal property creates an ambiguity, and raises the question whether it was not the intention of the settlors that these words should be interpreted " heir " as to the real property and " next of kin " as to the personal property. (*Woodward* v. *James*, 115 N. Y. 359; *Lawton* v. *Corlies*, 127 N. Y. 100; *Luce* v. *Dunham*, 69 N. Y. 36; *Williams* v. *Ashton*, 1 J. & H. 115; *Tillman* v. *Davis*, 95 N. Y. 17; *Slosson* v. *Lynch*, 43 Barb. 147; *Knickerbacker* v. *Seymour*, 46 Barb. 205; *Murdock* v. *Ward*, 67 N. Y. 387; Schouler on Wills, § 547; *French* v. *Carhart*, 1 N. Y. 96.) The words " according to the Statute of Distributions of the state of New York," in the deed of 1876 do

not qualify the words "next of kin," as descriptive of the objects of the gift, and cannot have the effect of restricting the class of persons who take in remainder. (*Luce* v. *Dunham*, 69 N. Y. 39 ; *Phillips* v. *Garth*, 3 Bro. Ch. 64 ; *Withy* v. *Mangles*, 10 Cl. & Fin. 215 ; *Cholmondeley* v. *Ld. Ashburn*, 6 Beav. 86 ; *Garrick* v. *Ld. Camden*, 14 Ves. 372 ; *Slosson* v. *Lynch*, 43 Barb. 147 ; *Murdock* v. *Ward*, 67 N. Y. 387 ; *Worseley* v. *Johnson*, 3 Atk. 758.)   The decision of the Court of Appeals in the case of *McCurdy* v. *N. Y. Life Ins. & Trust Co.* (151 N. Y. 667), declaring the legal effect of the deed of 1885 is binding upon the court in the present case under the doctrine of *stare decisis*.   (*Baker* v. *Lorillard*, 4 N. Y. 257 ; *Towle* v. *Forney*, 14 N. Y. 423 ; *Chase* v. *Chase*, 95 N. Y. 379 ; 2 Black on Judgments, § 603 ; *Chamberlain* v. *Taylor*, 105 N. Y. 186 ; *Storey* v. *Brennan*, 15 N. Y. 527.)   The costs of the appeal to the Appellate Division, as well as the costs of this appeal, should be paid out of the fund in the hands of the trustee, and not charged against the appellant personally.   (*Rogers* v. *Ross*, 4 Johns. Ch. 608 ; *Irving* v. *De Kay*, 9 Paige, 533 ; *Oxley* v. *Lane*, 35 N. Y. 351.)

*John L. Cadwalader* and *George Coggill* for respondents. The land conveyed by the Livingstons to the trustee in discharge of their obligations to pay $100,000 each, arising under the trust agreement of 1876, must in equity be regarded as money.   (1 Pom. Eq. Juris. § 371 ; 3 Pom. Eq. Juris. § 1159.) Appellant's counsel err in assuming as matter of law that the appearance of the trustee, with Mrs. Hamilton and Mrs. Hoyt as joint defendants in the suit to set aside the trust deed, creates an estoppel or binds the several defendants, as between each other on the doctrine of *res adjudicata*, and permits Madame de Courval, although not a party, to avail herself of the estoppel as being represented by the trustee.   (*Minnesota Co.* v. *Chamberlain*, 3 Wall. 704 ; Freeman on Judgments, § 158 ; Code Civ. Pro. § 521 ; *Ostrander* v. *Hart*, 130 N. Y. 406 ; *McGuckin* v. *Milbank*, 83 Hun, 476.)   The intention

of the grantors to designate as beneficiaries their "next of kin" as distinguished from their heirs at law is evident. (*Lawton* v. *Corlies*, 127 N. Y. 100.) The language "next of kin of the parties of the first part, according to the Statute of Distributions of the state of New York," can under no circumstances be construed as meaning heirs at law as to the realty held by the trustee. (*Keteltas* v. *Keteltas*, 72 N. Y. 312; *Murdock* v. *Ward*, 67 N. Y. 387; *Slosson* v. *Lynch*, 43 Barb. 147; *De Beauvoir* v. *De Beauvoir*, 3 H. L. Cas. 524; 2 Jarman on Wills, 927; *Matter of Dixon*, L. R. [1 P. D.] 81; *Fabens* v. *Fabens*, 141 Mass. 395; *Lincoln* v. *Perry*, 149 Mass. 368; *Clarke* v. *Cordis*, 4 Allen, 466.)

VANN, J. This action was brought to settle the accounts of the plaintiff as the trustee of two similar trusts, to construe the instruments by which said trusts were created and to secure the instruction of the court as to the proper method of distributing the trust estates.

On the 14th of June, 1873, the plaintiff became the trustee of a trust created under the will of James Boggs, embracing both real and personal property. Said trust was for the benefit of Julia A. Livingston during the joint lives of herself and Lewis Livingston, her husband, and was to cease upon the death of either. If the said Lewis died first the trustee was to transfer the entire trust estate to her, but if she died first the trustee was to transfer it all to her children.

On the 16th of December, 1876, James B. Livingston and Lewis H. Livingston, Jr., the only children of the said Julia, who, with her husband, was still alive, executed and delivered to the plaintiff a sealed instrument, whereby, after reciting the foregoing among other facts and declaring their intention to continue said trust as to a part of the trust property in case they or either of them should survive their mother and she should die before their father, each conveyed to the plaintiff "the sum of $100,000, parcel of the aforesaid trust property to which he is now or shall hereafter be entitled, * * * subject to the life estate of the said Julia A. Livingston" and

subject to divestment if she should survive her husband, " upon the trusts and conditions as follows : to invest the said sum of $100,000 and to keep the same invested during the life of the " settlor; " to receive the income thereof and *to* pay over the net proceeds of the same to the " settlor " during his life, and upon his death to distribute the said sum of $100,000 with its accumulations, if any, equally among the children of the " settlor " and the descendants of his deceased children *per stirpes*.  If the said " settlor " die without issue living, then to pay the income of the same to the said " the other settlor " for his life, and at his death to distribute the same equally among the children and the descendants of the deceased children of the said " other settlor " in equal shares *per stirpes*. * * * And the parties of the first part (settlors) further declare that if neither the said James B. Livingston nor the said Lewis H. Livingston, Jr., leave lineal descendants, then, upon the death of the survivor of them, the parties of the second part shall distribute both of the sums hereby conveyed in trust among the next of kin of the parties of the first part according to the statute of distributions of the state of New York."

On the 24th of November, 1884, Julia A. Livingston died, leaving her surviving Lewis Livingston, her husband, and said two sons, her only descendants.  The trust created by the will of James Boggs was thereby terminated and the property covered by it, subject to the cross-trusts created in 1876, vested absolutely in the said James B. and Lewis H. Livingston, Jr., who, on the 21st of February, 1885, executed and delivered to the plaintiff a second instrument, under seal, whereby, after reciting the most of the foregoing facts, mentioning the property to which they became entitled upon the death of their mother and the division thereof, *in specie*, by the trustee between them, after they had transferred to it certain real and personal property for the purposes of said cross-trusts, they jointly and severally ratified and confirmed the acts of the trustee and formally released it from further liability in the premises.  They further ratified and confirmed

the trust deed to the plaintiff of December 16, 1876, and the designation of securities and property, real as well as personal, to be retained for the purposes of the trusts thereby created. They also formally transferred and conveyed to the plaintiff their respective rights and interests in the "securities and property so retained and designated, to be held by the said company upon the said trust set forth in the said deed of trust."

April 14, 1886, Lewis Livingston, father of the settlors, died, and October 3rd, 1887, said James B. Livingston died, leaving a will by which he gave all his property to his brother, Lewis H. Livingston, who was his only heir at law and next of kin.

February 27th, 1893, the said Lewis H. died, leaving a will dated May 10th, 1892, whereby, after making certain bequests, he gave to the defendant Margaret L. Lee the rest of his estate, both real and personal. He had never married and he left no ancestor, descendant, brother or sister. His sole heir at law in respect to real estate coming to him from his mother's side was the defendant Mary Ray de Courval, the only child of a maternal aunt, who died in 1874, leaving no other descendant. His only next of kin were two paternal aunts, originally defendants herein, but now deceased, and represented by the respondents, their executors. During the continuance of the cross-trusts the property affected remained practically unchanged in character.

The question presented is whether the real estate covered by the cross-trusts, or the proceeds thereof, when sold by the trustee, should go to the personal representatives of said paternal aunts or to Madame de Courval.

It is claimed by the counsel for the appellant that the settlors had in contemplation a mixed fund of real and personal property, and that the words "next of kin," when used in reference to such a mixed fund, should be interpreted to mean heirs as to the real estate, and next of kin as to the personal property. This position, as he candidly admits, would exclude the next of kin entirely, provided the property to be distributed was all real estate.

It is claimed by the respondents, among other things, that the settlors intended to designate as beneficiaries their next of kin as distinguished from their heirs at law, and that under no circumstances can the words used be so construed as to include the appellant.

The referee before whom the action was tried, and two of the justices of the Appellate Division, held that the deed of 1876 effected a conversion of the realty into personalty; that the trust consisted at the time of its termination of personalty only, and that it should, therefore, go to the respondents as representatives of the next of kin. A majority of the justices of the Appellate Division, however, held that there was no conversion by the deed of 1876, and that when the trust terminated the property covered by it was both real and personal. They further held that the direction to distribute both real and personal property necessarily required, and hence impliedly authorized, a sale of the realty, and that the direction to make distribution among the next of kin, according to the Statute of Distributions, excluded the heir at law.

By the deed of 1876 a trust was created, complete and irrevocable, which could neither be changed nor cut down by any subsequent instrument executed by the settlors, either with or without the consent of the trustee. There was no reservation of power to supply defects, if any, or to make any alteration whatever. Nothing further was required to complete the trust itself, but for convenience it was desirable that from the aggregate amount of property covered by the Boggs trust, worth perhaps $500,000, there should be separated enough to satisfy the trusts created by the Livingston brothers, which required property to the amount of $200,000, and this was the object of the deed of 1885. No new trust was created thereby and nothing was done, indeed nothing could then be done, to affect the devolution of the property. If the trust created by the deed of 1876 was of personalty only, the setting apart and transfer in 1885 of both real and personal property to meet it did not change the rights of any person, because such rights were fixed and unalterable, and could not be

changed without the consent of those interested. If, on the other hand, that trust included both real and personal property at the time of its creation, the trust property continued real and personal, in law, until the end of the trust, regardless of how it was invested by the trustee or what was transferred to satisfy it by the settlors. Its legal character could not be altered by the united action of both settlors and trustee, so as to affect its destination at the end of the trust. It was neither the purpose nor effect of the deed of 1885 to change the rights of any beneficiary, for the property thereby set apart was to be held by the trustee " upon the said trust set forth in the said deed of trust " of 1876. That deed measured the rights of all parties in interest, not the later deed, given merely for convenience, in order to carve out a part to be still retained by the trustee, while the rest went to the Livingston brothers absolutely. The deed of 1885 created no trust, but ratified the one created in 1876, and separated from the mass of property covered by the Boggs trust a part to be devoted exclusively to the Livingston trust. The words of the deed creating that trust, therefore, read, if ambiguous, in the light of surrounding circumstances, must be our guide in ascertaining the intention of the settlors as to the ultimate destination of the property. The rule of distribution, as laid down by them, was that the trustees should " distribute both of the sums hereby conveyed in trust among the next of kin of the parties of the first part, according to the Statute of Distributions of the state of New York."

We find no ambiguity in this language, and hence there is no necessity for resorting to surrounding circumstances, such as the intimacy claimed to have existed between the appellant and the settlors, or to the principle that in the case of doubtful construction, the law favors that which permits descent in the line of ancestral blood. " Where the language is clear, unequivocal and unambiguous, the contract is to be interpreted by its own language, and courts are not at liberty to look at extrinsic circumstances surrounding the transaction, or elsewhere, for reasons to ascertain its intent; the understanding

of the parties must be deemed to be that which their own written agreement declares." (*Springsteen* v. *Samson*, 32 N. Y. 703, 706.) Under any other rule " no lawyer would be safe in advising upon the construction of a written instrument, nor any party in taking under it, for the ablest advice might be controlled and the clearest title undermined if, at some future period, parol evidence of the particular meaning which the party affixed to his words, or of his secret intention in making the instrument, or of the objects he meant to take benefit under it, might be set up to contradict or vary the plain language of the instrument itself." (*Shore* v. *Wilson*, 9 Clark & Fin. 355–366.)

If, as is claimed by the appellant, an ambiguity was created by the deed of 1885, it is of no importance, for, as we have already seen, it was not within the power of the parties to that instrument to affect rights springing from the deed of 1876. Resort cannot be had to the later deed in order to create an ambiguity in the earlier, and make it the basis of construction through the aid of extrinsic facts.

We do not need in this case to go beyond the language employed by the settlors in order to learn their intention, which must be " collected from the whole context and subject-matter of the deed so as to make one entire and consistent construction of the whole." (Beals Cardinal Rules of Legal Interpretation, 67.) The meaning of the words used by them is plain, clear and free from ambiguity, whether the trust estate consisted of real or personal property. They directed the trustee, in the contingency which has happened, to make distribution among their next of kin according to the Statute of Distributions. While the word " heir," which has a popular, as well as a technical meaning, is, under special circumstances, held to include " next of kin," the latter phrase, which has not acquired a popular meaning, but has a technical meaning only, is never held, when standing alone, to include heirs at law. " Heir " may have either of two meanings, but " next of kin," when used *simpliciter*, as in the instrument before us, only one. Where such a strictly legal phrase is used in an

2

important legal instrument, drawn, as this one obviously was, with caution, foresight and the advice of some person learned in the law, in the absence of words in the context plainly indicating a different intention, it must be presumed to have been used with its strict technical meaning. (*Keteltas* v. *Keteltas*, 72 N. Y. 312; *Murdock* v. *Ward*, 67 N. Y. 387; *Slosson* v. *Lynch*, 43 Barb. 147, 150; 2 Bl. Com. 172.) We find nothing in the other parts of the deed to control the intention which the literal force of the phrase used necessarily imputes to the settlors. It occurs in the operative part of the deed and cannot be controlled by the recitals, even if inconsistent therewith, but there is no inconsistency.

The settlors, however, were not contented with the simple use of this phrase, but they went farther and added, " according to the Statute of Distributions of the state of New York." It is impossible to describe heirs at law by a reference to this statute, which governs the devolution of title to property among next of kin. From its origin in the year 1670 to the present time it has never had anything to do with heirs at law, except by way of exclusion. (22 & 23 Car. II, ch. 10; 3 R. S. [6th ed.] 104; 4 Encyc. Laws of England, 310.) The distributees named in it have always been the next of kin, and the reference to it by the settlors makes their intention doubly plain by a second description of the class of persons to whom they wished the property to go. Both descriptions necessarily exclude heirs at law from participation.

We think the learned Appellate Division was right in holding that the settlors designated a class capable of being definitely ascertained by a simple reference to the statute; that distribution of the property covered by the trust should be made exclusively among the persons belonging to that class, and that the proceeds of the real estate should not be distributed among another class of persons, who, under another statute, would take as heirs at law.

The judgment should be affirmed, with costs.

All concur.

Judgment affirmed.