In the Matter of the Accounting of FRANK GULDEN et al., as Trustees under the Will of CHARLES GULDEN, Deceased.

Surrogate's Court, New York County, April 9, 1946.

*Bauerdorf & Taylor* for Frank Gulden and another, as surviving trustees, petitioners.

*William L. Hanaway* and *Rosemary Edelman* for Alfred M. Snedeker and another, as executors of Emma G. Snedeker, deceased, and others, respondents.

*Lawrence R. Condon* and *Charles P. Connell* for Irving Trust Company, as executor and trustee under the will of Frank Hall, deceased, as assignee of Charles V. Snedeker, and for Irving Trust Company, as executor and trustee under the will of Frank Hall, deceased, respondent.

*Henry B. Lamm* for Florence G. Mullins and another, respondents.

*Murray H. Klinger,* special guardian of Gerald P. Mullins and others, infants, respondents.

DELEHANTY, S. In this trustees' accounting questions relating to the disposition of the remainders of terminated trusts must be answered. Deceased made his will on February 10, 1916. He died on August 15, 1916. He left him surviving five children. By paragraph eleventh he directed his executors and trustees to establish equal separate trusts of his residuary estate for his five children respectively. He gave to them respectively the income of the trust for their respective lives. The distribution of the remainders of the trusts for two of his children, Harriet Gulden Hall and Emma Gulden Snedeker are here involved.

Harriet Gulden married Frank Hall in 1917. She died on January 11, 1922, without issue, leaving surviving her husband, her brother Frank and her three sisters, Emma, Margaret and Florence. Letters testamentary upon her estate were issued to Frank Hall on February 14, 1922. The remainder of her trust is disposed of in the following language: " and upon her death, to pay over the principal of said trust fund to her issue, in equal shares, or in default of issue, to pay the same to her next of kin as though it were hers absolutely and she had died intestate."

In October, 1926, the then trustees of the estate of the deceased filed an intermediate account of their proceedings. Frank Hall, the husband of the life tenant, was cited as executor of her estate but not in his individual capacity. He did not appear in that proceeding in either capacity. None of the other interested parties appeared. The special guardian recommended that the account be settled and approved as filed. A decree settling the account was signed on January 20, 1927. The account as well as the decree contained the recital that all of the children of the deceased were then living " except said Harriet Gulden Hall, who died on the 11th day of January, 1922, without issue, leaving as her only next of kin her brother and sisters, Frank Gulden, Emma Gulden Snedeker, Margaret Gulden Titus and Florence Gulden Mullins ". The decree directed the distribution of one fifth of the balance of cash and personalty belonging to the principal of the general estate to the afore-mentioned brother and sisters " to be divided equally among them as the next of kin of Harriet Gulden Hall, deceased ".

The decree did not specifically refer to the vesting of the real property of the Hall trust left by the decedent and remaining unsold. However by written agreement dated the 2d day of February, 1922, executed shortly after the death of Harriet Gulden Hall, the terms of which were set forth in the account, her brother and three sisters consented that the executors and trustees named in the will of testator might remain in possession of and might manage the real and personal property theretofore constituting and belonging to the trust created for the benefit of said Harriet Gulden Hall, deceased, for the benefit of the parties to said agreement as the next of kin of said Harriet Gulden Hall, deceased. The basis for the agreement was stated to be that " the estate of testator consisted largely of improved real property and it has been deemed inadvisable to sell all of said property for the reason that no adequate offers were received for the parcels which had not been sold." It was further agreed: " When the remaining real property is sold, one-fifth of the proceeds of sale can be paid to the next of kin of Harriet Gulden Hall, deceased, and the remaining four-fifths can be set apart for the four remaining residuary trusts."

In pursuance of that agreement the income of the one fifth of the estate which had theretofore constituted the trust for Harriet Gulden Hall was paid to the afore-mentioned next of kin.

In an accounting filed November 22, 1935, which resulted in a decree dated December 3, 1936, the trustees showed that all

income from the real estate formerly comprising the Harriet Gulden Hall trust and a part of the corpus thereof had been distributed to the brother and three sisters as the only next of kin of the former life tenant. Shortly before the date of that decree and on May 27, 1936, Frank Hall was adjudicated an incompetent. It is asserted that the committee of his property was granted an opportunity to intervene in the accounting proceeding but that it failed to do so.

Frank Hall died on July 31, 1939. Irving Trust Company was appointed his executor. It now contends that the decree of January 20, 1927, was erroneous in that it failed to make distribution to Frank Hall of half of the remainder of his wife's trust fund. It asserts that although Frank Hall, as a surviving spouse, was not a " next of kin " of his wife, he was nevertheless entitled to share in the remainder because under the language of the will it was to be paid to those who would take as in intestacy under the Statute of Distribution. The executor contends that it is not barred from raising the question at this time for the reason that Frank Hall was not cited individually in the accounting proceeding and was therefore not bound by the decree of January 20, 1927, and for the further reason that the main portion of the corpus of the trust has never been distributed by the trustees and is still held intact by them.

The accounting trustees and some of the other interested parties take the position that Frank Hall in his lifetime and the Irving Trust Company as his executor have been guilty of laches and are now estopped from raising any question with reference to the disposition of the remainder under the will. They argue that the actual and practical construction placed upon the will by both this court and the parties interested is in accord with the expressed intention of the deceased and the applicable law. The court is of the view that these contentions are correct. There can be no doubt that Frank Hall acquiesced in the practical construction of the will adopted by the parties under the agreement executed by them almost immediately after his wife's death in 1922. That construction was in effect confirmed by the decree of January 20, 1927, although no construction was specifically raised at that time by the petition. The decree recognized the status of the brother and sisters of the life tenant as her sole next of kin and directed distribution of the personalty accordingly. The title to the unsold real property owned by the deceased vested immediately upon the termination of the trust in the brother and sisters of the life tenant as the remaindermen (*Matter of Miller*, 257 N. Y. 349). The trustees as such no longer

possessed any right under the will to perform any act of administration in respect of such real property (*Matter of Miller, supra*).

The agreement of 1922 effected a division of the realty and constituted the trustees nothing more than agents to collect the rents and manage the real estate for the benefit of the parties to the agreement until a sale was accomplished. Though not cited in his individual capacity in the 1926 accounting Frank Hall must be presumed to have had knowledge of the agreement as to distribution, the payment of income to his wife's brother and sisters as her sole next of kin and the effect of the decree of January 20, 1927. His silence and his failure to act for a period of fourteen years from his wife's death until his commitment as an incompetent are alone sufficient to constitute an estoppel by laches and acquiescence (*Matter of Hennessy,* 155 Misc. 53, and cases cited therein). The failure of the committee to intervene in the accounting proceeding or to assert any rights in his behalf for a period of three years until his death in 1939 confirms the estoppel.

Entirely apart from the question of estoppel the court is of the opinion that Frank Hall was not a person entitled to share in the remainder under the text of the will and the statutes and law in effect at the date of death of deceased in 1916 and at the date of death of the life tenant in 1922. It is conceded that a surviving spouse was not a next of kin at either of these dates. It was not until 1938 by the enactment of section 47-c of the Decedent Estate Law (L. 1938, ch. 181) that a surviving spouse was declared to come within the category of a distributee in intestacy. The executor of Frank Hall contends that the direction " to pay the same to her next of kin as though it were hers absolutely and she had died intestate " indicated an intention on the part of the deceased to include all who would take the remainder under the Statute of Distribution in effect at the time of her death, including her surviving spouse. The executor of Hall cites in support of its argument *Matter of Bates* (173 Misc. 703) and *Matter of Hecker* (178 Misc. 449). The court is of the view that these cases are not in accord with the pronouncement of the Court of Appeals in *Matter of Waring* (275 N. Y. 6). The long line of cases preceding that authority, including *Murdock* v. *Ward* (67 N. Y. 397), *Luce* v. *Dunham* (69 N. Y. 36), *Keteltas* v. *Keteltas* (72 N. Y. 312), *Platt* v. *Mickle* (137 N. Y. 106) and *Matter of Devoe* (171 N. Y. 281) control the determination of the question. In *Matter of Waring* (*supra,* p. 9), the remainder was

to be paid " to the next of kin of the said John, according to the laws of the State of New York." Judge RIPPEY there said (pp. 13-14) : " There is no meaning to be assigned to ' next of kin ' except the class constituting blood relatives. That is the primary signification of the expression (28 R. C. L. 254; *Slosson* v. *Lynch*, 43 Barb. 147; *Tillman* v. *Davis*, 95 N. Y. 17, 24), and at no time has the wife of a son been within that class. The use of that expression by the testator to define and limit the class to whom the remainder of the trust should pass was intentionally and understandingly made and was distinctly to exclude the wife of the son. He meant that distribution should be made to that class only. The law includes within that class only blood relatives as the class might be enlarged or diminished at the time of the son's death by the laws of the State of New York then in force. He did not say or intend to say that the residue was to be distributed to those who would be entitled to inherit under the Statute of Distribution existing at that time. He specifically said it should go to his ' next of kin.' No matter to whom his estate might otherwise go at that time under any statute relating to the distribution of the estate of an intestate, he limited the passing of his property to relatives of the blood, viz., to his ' next of kin.'

" Had the testator here said merely that the remainder should pass according to the laws of the State of New York in effect at the time of the death of the son, distribution under the provisions of section 83, subdivision 4, of the Decedent Estate Law might have been made. He did not say so, nor did he intend to so provide, and the widow of John T. Waring, Jr., is not included as a subject of the testator's bounty."

It will be noted that in the *Waring* case (*supra*), the additional words " according to the laws of the State of New York " did not enlarge the class of takers so as to include a surviving spouse but limited the remainder to the *blood relatives* entitled to take under the Statute of Distribution. The language of deceased's will comes squarely within the reasoning and the rule laid down in *Matter of Waring* (*supra*). The use of the words " as though it were hers absolutely and she had died intestate " after the direction to " pay the remainders to her next of kin " did not operate to enlarge the meaning of the term " next of kin " to include Frank Hall, the life tenant's husband. As used in deceased's will the term must be construed in its strict legal sense to mean those who are kindred or relatives by blood who take in case of intestacy under the Statute of Dis-

tribution (*Slosson* v. *Lynch*, 43 Barb. 147). The Statute of Distribution in force both at the death of the deceased and the death of the life tenant limited " next of kin " to relatives of the blood. The language in the various wills construed in *Murdock* v. *Ward* (67 N. Y. 387, *supra*), and in the other cases cited above was similar to deceased's text and the result reached in each case requires the ruling that Frank Hall had no interest in the remainder of the trust for his wife's benefit.

As to the remainder of the trust for deceased's daughter Emma Snedeker the only question is whether it passed to her issue per stirpes or per capita. She died on December 6, 1944, leaving surviving a son, Charles V. Snedeker, and three grandchildren who are the children of Charles V. Snedeker. The remainder of her trust is disposed of as follows: " and upon her death, to pay over the principal of said trust fund to her issue, in equal shares, or in default of issue, to such persons and for such purposes as she shall by Will appoint, or in default thereof, to pay the same to her next of kin as though it were hers absolutely and she had died intestate."

The court holds that the quoted text clearly indicates that equality of distribution was the dominant thought in the mind of the deceased (*Matter of Farmers' Loan & Trust Co.*, 213 N. Y. 168; *Matter of Union Trust Co.*, 170 App. Div. 176, mod. 219 N. Y. 537; *Matter of Durant*, 231 N. Y. 41; *N. Y. Life Ins. & Trust Co.* v. *Winthrop*, 237 N. Y. 93; *Central Hanover Bank & Trust Co.* v. *Pell*, 268 N. Y. 354; *Matter of Mortimer*, 147 Misc. 543). In such case a per stirpes distribution must be decreed. There is in deceased's will more than " the mere faint glimpse of a contrary intention " necessary to overcome the presumption that a per capita distribution was intended. The provision that if the life tenant died without issue and without appointing the remainder it should go " to her next of kin as though it were hers absolutely and she had died intestate " indicates a per stirpes distribution was intended, since an intestate distribution under our statute excludes children whose parents are living. The remainder in the trust for the benefit of Emma Snedeker passed to Charles V. Snedeker, the life tenant's only surviving child.

All objections to the account not disposed of by these rulings will be heard on the 17th day of May, 1946 at 10:00 A.M. When such issues have been disposed of, the decree settling the account will construe the will in accordance with the foregoing.